[Cite as *State v. Dilo*, 2018-Ohio-2316.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 16AP-324 |
| v. | : | (C.P.C. No. 14CR-6218) |
| Michael Dilo, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 14, 2018

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Seth L. Gilbert,* for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Jeremy A. Roth,* for appellant. **Argued:** *Jeremy A. Roth.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Michael Dilo, appeals from the judgment of the Franklin County Court of Common Pleas entered after a jury found him guilty of aggravated possession of drugs, in violation of R.C. 2925.11, and aggravated trafficking in drugs, in violation of R.C. 2925.03. For the reasons set forth below, we affirm.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

{¶ 2} On November 21, 2014, Dilo was indicted on one count of aggravated possession of drugs under R.C. 2925.11 and one count of aggravated trafficking in drugs under R.C. 2925.03 for an offense that occurred on or about April 4, 2014. The indictment also alleged that Dilo had committed one additional count each of aggravated possession and aggravated trafficking for an offense that occurred on April 22, 2014. All counts alleged that the drug involved was methamphetamine and that the amount in question exceeded

one hundred times the bulk amount, as defined under R.C. 2925.01. (Nov. 21, 2014 Indictment.)

{¶ 3}  On March 17, 2016, Dilo was indicted in a separate case on one count each of aggravated possession and aggravated trafficking in methamphetamine, in an amount alleged to equal or exceed five times but less than fifty times the bulk amount, for an offense alleged to have occurred on or around May 3, 2014. The indictment also alleged two additional counts, for aggravated possession and aggravated trafficking of methamphetamine in an amount that exceeded one hundred times the bulk amount, for an offense that occurred on May 4, 2014. (Mar. 17, 2016 Indictment in Franklin C.P. No. 16CR-1499.)

{¶ 4}  The cases were consolidated for trial and the prosecution dismissed the first two counts of the November 21, 2014 indictment. The remaining counts were tried before a jury beginning on April 4, 2016. (Apr. 14, 2016 Jgmt.)

{¶ 5}  At trial, Shawn Wade of the Delaware County Sheriff's Office testified first for the prosecution. Deputy Wade was assigned to the Delaware County Drug Task Force and had participated in a two-year investigation into the activities of the DeJarnette drug trafficking organization. The investigation involved utilizing informants to purchase drugs, surveillance, traffic stops, and wiretaps to identify the organization's supply lines and distribution channels. Eventually, the investigation led to Columbus and to Dilo, who appeared on the wiretaps. (Apr. 5, 2016 Tr. at 25-28, 39.)

{¶ 6}  Donald S. Junk of the Columbus Division of Police also testified for the prosecution. Officer Junk was assigned to an investigating narcotics unit and was conducting surveillance of Dilo on the night of April 21, 2016, after receiving information that Dilo was going to be involved in a drug transaction at a residential house in Columbus, Ohio. Based on a picture of Dilo that Junk had received as part of the investigation, he identified Dilo driving a gray Pontiac Grand Am. Dilo drove from a gas station to the house in question, then left and drove to another gas station in Gallipolis, Ohio. There, Dilo met with a white male in his late 20s or early 30s with dark hair in front of the gas station. The man got into Dilo's car and they drove back to the residential house in Columbus, followed by a woman driving a Silver Hyundai. After spending some time there, Dilo and the woman left in the Pontiac and the man left in the Hyundai. They first drove to a BP station on South High Street near I-270 and then proceeded to another gas station one mile away. They then

continued south for another eight or ten miles to a Speedway gas station. (Apr. 6, 2016 Tr. at 129-39.)

{¶ 7} Deputy Wade was receiving reports from surveillance and actively monitoring phone calls and text messages between Dilo and Joseph DeJarnette at the time. He received word that another female had left the residence with the suspects and, at some point during their travels, Dilo and the man were in one car while being followed in the other car by the two females. Based on the calls and texts Wade was monitoring at the time, he believed that Dilo and his companions were transporting "at least two or three pounds." (Apr. 5, 2016 Tr. at 86.) Wade decided to have the car driven by the women stopped in Circleville because he believed that drugs were with them. However, no drugs were found in the women's car. After the stop, Dilo and DeJarnette exchanged texts in which Dilo assured DeJarnette that they were all "safe." (Tr. at 91.)

{¶ 8} Dilo testified that on August 3, 2014, he was leaving a Wendy's restaurant in Meigs County, Ohio, on a motorcycle when an officer attempted to stop him. Dilo fled from the officer because he was carrying "a pound of marijuana" and "a bunch of methamphetamine." (Apr. 7, 2016 Tr. at 195-96, 200.) Dilo wrecked the motorcycle while trying to dump the drugs and was arrested. After being released from the hospital and taken to jail, Dilo was interviewed by Detective Gilkey. Dilo stated that he told Gilkey a "big story about where the drugs came from" because he was afraid of being stuck in jail in "a small town" with a bond he couldn't pay. (Tr. at 201.) Dilo testified that he falsely told Gilkey that he had obtained the drugs from the DeJarnette brothers, who had recently been arrested and were "in the news," and that the drugs were actually from his "friend and business partner Allen Davies." *Id.*

{¶ 9} Gilkey called Deputy Wade, who subsequently traveled to the jail to interview Dilo. Wade recorded the interview with Dilo, which was played for the jury during Wade's testimony. (Apr. 6, 2016 Tr. at 13-15; State's Ex. D.)

{¶ 10} On the recording, Dilo stated that the marijuana and methamphetamine he was in possession of when he wrecked his motorcycle had come from James DeJarnette, delivered from his girlfriend to Dilo. (State's Ex. D at 4:43-5:26.)

{¶ 11} Dilo admitted that the DeJarnettes gave him methamphetamine to sell. Typically he would meet Joe DeJarnette, who would follow him to Parkersburg or Charleston, West Virginia to obtain the drugs, and Dilo would drive the drugs back. Dilo

would pay them $19,000 for one pound of methamphetamine and he typically would not pay for more than two pounds at a time. (State's Ex. D at 21:00-24:30).

{¶ 12} During the recording, Dilo also made several admissions concerning the events of the night of April 21, 2016 when Deputy Wade had him and the DeJarnettes under surveillance. Dilo confirmed that he had the drugs with him that night, not the women whose car Deputy Wade had ordered to be stopped. (State's Ex. D at 26:50.) After the stop, Joe DeJarnette was "freaked out" and came to Circleville to pick up the methamphetamine from Dilo. Dilo confirmed that the amount was at least two pounds of methamphetamine. Dilo also stated that he sold cars to the DeJarnettes. (State's Ex. D at 26:50-29:00.)

{¶ 13} During his trial testimony, Dilo presented a different story. He stated that he had gone to the house of the DeJarnettes on the night of April 21, 2016 and received $30,000 from them to purchase automobiles at a car auction. His explanation for having two cars and driving separately with others was that it was an attempt to minimize the chance of being pulled over and having the car searched with so much cash in it, because he didn't have a valid driver's license at the time. (Apr. 7, 2016 Tr. at 107-09.)

{¶ 14} After the interview with Deputy Wade, Dilo was released on bond on the condition that he contact a Franklin County prosecutor. He did so and agreed to enter into a controlled buy of one pound of methamphetamine from the girlfriend of one of the DeJarnettes. However, Dilo did not go through with the purchase and was arrested and charged. (Tr. at 216-21.)

{¶ 15} A jury returned a verdict on the counts of aggravated possession of drugs under R.C. 2925.11 and aggravated trafficking in drugs under R.C. 2925.03 that occurred on or about April 22, 2014. The jury found Dilo not guilty of the remaining counts.

{¶ 16} Dilo now appeals and asserts the following three assignments of error:

> [I.] The trial court erred when it entered judgment against Appellant when there was not sufficient evidence to support the guilty verdicts and conviction of Appellant for possessing and/or trafficking methamphetamine in an amount equal to or exceeding 100 times the bulk amount, in violation of his due process rights under the Ohio and United States Constitutions.
>
> [II.] Appellant was not afforded effective assistance of counsel as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution because trial counsel failed to request a jury instruction on the lesser included offenses of

Aggravated Possession and Aggravated Trafficking in Drugs without a weight element and when trial counsel waived closing argument.

[III.] The trial court erred when it entered judgment against Appellant when the guilty verdicts returned by the jury were against the manifest weight of the evidence in violation of his due process rights under the US and Ohio Constitutions.

## II. FIRST AND THIRD ASSIGNMENTS OF ERROR

{¶ 17} We first consider Dilo's first and third assignments of error concerning the legal sufficiency and the manifest weight of the evidence against him. Two different legal standards apply to the legal sufficiency of the evidence and the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different"). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 37, citing *Thompkins*. "Sufficiency is a test of adequacy." *Id.*, citing *Thompkins*. "The standard when testing the sufficiency of the evidence 'is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 15, quoting *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70. A reviewing court "will not disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶ 18} The manifest weight of the evidence analysis, on the other hand, requires the appellate court to consider the state's evidence as an additional, or "thirteenth juror." *Thompkins* at 387. After "reviewing the entire record," the appellate court " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist.1983). " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin.*

{¶ 19} The offense of possession of drugs is defined under R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." If the substance is included under Schedule II, an offender is guilty of aggravated possession of drugs. R.C. 2925.11(C)(1). If the amount possessed exceeds one hundred times the bulk amount, "the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree." R.C. 2925.11(C)(1)(e).

{¶ 20} Trafficking in drugs is defined under R.C. 2925.03. The relevant portion of the statute prohibits any person from knowingly doing any of the following acts: "Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2925.03. One who commits the offense with a Schedule II substance is guilty of aggravated trafficking in drugs.  R.C. 2925.03(C)(1). If the amount in question exceeds one hundred times the bulk amount, "the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree." R.C. 2925.03(C)(1)(f).

{¶ 21} Methamphetamine is a Schedule II substance. R.C. 3719.41, Schedule II(C)(2). The bulk amount of any Schedule II substance is defined as "[a]n amount equal to or exceeding three grams of a compound, mixture, preparation, or substance that is or contains any amount of a schedule II stimulant, or any of its salts or isomers, that is not in a final dosage form manufactured by a person authorized by the Federal Food, Drug, and Cosmetic Act and the federal drug abuse control laws." R.C. 2925.01(D)(1)(g).

{¶ 22} Here, Dilo admitted that he was in possession of at least two pounds of methamphetamine on the night of April 21, 2016. He also admitted that the drugs were with him in the car when he and his companions drove from Columbus to Circleville. Dilo's out-of-court statements were admissible for the truth of what they asserted because, under Evid.R. 801(D)(2), they were non-hearsay admissions of a party opponent. Such statements may be offered against a defendant "as substantive evidence of his guilt." *State v. Moody*, 2d Dist. No. 26926, 2016-Ohio-8366, ¶ 68. Based on Dilo's statements, a rational jury could have determined beyond a reasonable doubt that he both knowingly possessed and knowingly transported methamphetamine, a Schedule II substance, and in the bulk

amount of more than three ounces. *Beverly* at ¶ 15. Thus, the evidence was legally sufficient to convict Dilo of aggravated possession of drugs under R.C. 2925.11 and aggravated trafficking of drugs under R.C. 2925.03.

{¶ 23} Citing *State v. Huber*, 187 Ohio App.3d 697, 2010-Ohio-2919 (2d Dist.), Dilo argues that the state failed to prove the specific bulk amount. In *Huber*, the Second District Court of Appeals remanded a conviction after the state failed to prove its allegation of the bulk amount of fentanyl after the prosecutor elected to prove bulk amount under the definition in R.C. 2925.01(D)(1)(d) of "five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual," but put on no evidence of what constituted the maximum daily dose.

{¶ 24} *Huber* is inapplicable because it used the "maximum daily dose" definition of bulk amount under R.C. 2925.01(D)(1)(d), which was not used in Dilo's case. Here, the bulk amount of the drug in question, methamphetamine, was proved by weight, under the definition in R.C. 2925.01(D)(1)(g): "An amount equal to or exceeding three grams of a compound, mixture, preparation, or substance that is or contains any amount of a schedule II stimulant, or any of its salts or isomers, that is not in a final dosage form manufactured by a person authorized by the Federal Food, Drug, and Cosmetic Act and the federal drug abuse control laws." Dilo admitted that he had at least two pounds of methamphetamine, far beyond three grams.

{¶ 25} Dilo also argues that the evidence was legally insufficient evidence to show that the substance in question, methamphetamine, was a Schedule II drug under *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, because the state introduced no physical evidence of recovered drugs or tested drugs to prove the requirement that the substance contained "a detectable amount" of the illegal substance. However, the *Chandler* requirement only applies to cases where actual physical drugs are recovered. In a subsequent case, the Supreme Court of Ohio clarified that the *Chandler* holding is:

> [L]imited to those cases where the substance offered for sale is recovered and subjected to testing to determine whether it contains a detectable amount of the drug offered for sale. *It does not apply to situations where no drug is recovered and no testing is performed.* Hence, where an offender offers to sell a controlled substance in a quantity that would implicate the MDO [major drug offender] specification, and where no substance is ever recovered or tested, *Chandler* is factually

> distinguishable, as it is a counterfeit drug case where the alleged drug was recovered and tested.

(Emphasis added.) *Garr v. Warden, Madison Corr. Inst.*, 126 Ohio St.3d 334, 2010-Ohio-2449.

{¶ 26} Here, as discussed, the state introduced direct evidence in the form of Dilo's own statements to prove its allegations of possession and trafficking. This was legally sufficient to prove that he was guilty of these offenses. *State v. Robinson*, 8th Dist. No. 105667, 2018-Ohio-285, ¶ 22 (affirming conviction for possession of drugs under R.C. 2925.11 based on the defendant's statements "made to police officers confirming his possession").

{¶ 27} We now turn to Dilo's challenge to the manifest weight of the evidence. Dilo argues that his testimony at trial shows that the admissions he made on the recording to Deputy Wade were false, and that any transactions between himself and the DeJarnettes concerned the sale of automobiles.

{¶ 28} After reviewing the testimony, we see no evidence that the jury lost its way in choosing to disbelieve Dilo's self-serving testimony and instead believe the admissions he made to Deputy Wade during the recorded interview. *Thompkins* at 387. Dilo's argument is essentially an attack on his own credibility during the interview and an assertion that he was more credible at trial. We defer to the jury's evaluation of the credibility of all the witnesses, including Dilo, and conclude that his conviction was not against the manifest weight of the evidence. Accordingly, the first and third assignments of error are overruled.

## III. SECOND ASSIGNMENT OF ERROR

{¶ 29} In Dilo's second assignment of error, he argues that he received ineffective assistance of counsel because his attorney failed to request a jury instruction on lesser-included offenses without a weight element and because his attorney chose to waive the presentation of a closing argument.

{¶ 30} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 686 (1984). In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. First, he must demonstrate that his trial counsel's performance was deficient. *Id.* at 687. This requires a showing that his counsel

committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id.* To show prejudice, he must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to erode confidence in the outcome. *Id.* at 694.

{¶ 31} Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. A reviewing court must be "highly deferential to counsel's performance and will not second-guess trial strategy decisions." *State v. Tibbetts*, 92 Ohio St.3d 146, 166-67 (2001). Strategic choices made after substantial investigation "will seldom if ever" be found wanting. *Strickland* at 686. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Id.*

{¶ 32} Here, Dilo's arguments do not satisfy the first prong of demonstrating deficient performance under *Strickland* because they are all attributable to trial strategy. First, as the Supreme Court has held, a "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Griffie*, 74 Ohio St.3d 332, 333 (1996); *State v. Jones*, 10th Dist. No. 16AP-128, 2017-Ohio-1121, ¶ 29.

{¶ 33} Second, the wide latitude given to trial counsel in terms of strategy extends to the decision whether or not to give a closing argument. The decision "may have simply been a tactical decision made by defense counsel to prevent the state from splitting closing argument and staging a strong rebuttal." *State v. Burke*, 73 Ohio St.3d 399, 405 (1995). This is particularly true in this case, where the state would have had the opportunity in rebuttal to attack any of Dilo's testimony referenced by his attorney during closing, as well as damage Dilo's credibility in the eyes of the jury.

{¶ 34} For the foregoing reasons, Dilo cannot demonstrate that his trial counsel's performance was deficient under *Strickland.* Because he did not receive ineffective assistance of counsel at trial, the second assignment of error is overruled.

## IV. CONCLUSION

{¶ 35} The evidence presented by the state against Dilo, including his own statements, was not legally insufficient to convict him of aggravated possession of drugs under R.C. 2925.11 and aggravated trafficking in drugs under R.C. 2925.03, and his convictions were not against the manifest weight of the evidence. Furthermore, he did not receive ineffective assistance of trial counsel. Accordingly, we overrule all three assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____