[Cite as *State v. Freeman*, 2020-Ohio-3381.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-181 |
| v. | : | (C.P.C. No. 17CR-3134) |
| Donell T. Freeman, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 18, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sarah V. Edwards*, for appellee.

**On brief:** *Yavitch & Palmer, Co., L.P.A.*, and *Jeffrey A. Linn, II*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Donell T. Freeman, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, following a bench trial, of one count of aggravated possession of drugs with a firearm specification and one count of having a weapon while under disability with a firearm specification. For the following reasons, we affirm.

{¶ 2} On June 8, 2017, plaintiff-appellee, State of Ohio, indicted appellant on one count of aggravated possession of drugs, in violation of R.C. 2925.11, a fifth-degree felony, and one count of having a weapon while under disability, in violation of R.C. 2923.13, a third-degree felony. Each count included an 18-month firearm specification pursuant to

R.C. 2941.141(D). Appellant waived his right to a jury trial and elected to be tried to the court on all charges.

{¶ 3}   The events giving rise to the indictment occurred on September 3, 2016 at a two-story apartment located at 546 Lilley Avenue in Columbus, Ohio.  At approximately 3:45 p.m., Columbus Police Officers Amanda Hill and Jonathan Skinner were dispatched to the apartment on a "disturbance call" that soon was upgraded to a "burglary in progress." (Feb. 20, 2019 Tr. at 41.)  Upon arrival, Officer Skinner walked around the outside of the building to the back of the apartment. The back door was open, and a window was broken out. Two teenage black males ran out the back door.

{¶ 4}   In the meantime, Officer Hill approached the open front door and heard a woman yelling "[g]et out of my house." *Id.* at 43. She entered the apartment and observed a man, later identified as appellant, standing on the second floor at the top of the staircase, which was 15 to 20 feet above where Officer Hill stood at the bottom of the staircase. According to Officer Hill, appellant was holding a small, black ".380 size pistol" in his right hand; the gun was pointed in the direction of the woman's voice. *Id.* at 50. Officer Hill described the lighting in the stairwell as "dim," but "not dark at all." *Id.* at 45.

{¶ 5}   Officer Hill ordered appellant to get on the floor. Appellant did not comply with this order; rather, he dropped the gun at the top of the staircase and then descended the stairs to the first floor. When appellant reached the bottom of the staircase, Officer Hill handcuffed him.

{¶ 6}   A woman, later identified as Shaneka Fraizer, followed appellant down the stairs. She advised Officer Hill, "[i]t's mine, it's mine, it's my gun," and then walked back upstairs.  *Id.*  at 47.  Officer Hill then heard Ms. Fraizer yelling "it's just a screwdriver" from upstairs.  *Id.* at 49.  According to Officer Hill, appellant "kind of scoffed" and said "yeah, yeah, it is a screwdriver." *Id.* at 50.

{¶ 7}   Meanwhile, Officer Skinner entered the apartment through the back door. Officer Hill informed him that appellant had dropped a "small, black handgun, possibly a .380 caliber" gun at the top of the staircase.  *Id.* at 77. She also reported that there were other people inside the apartment.

{¶ 8}   Officer Skinner went upstairs to retrieve the gun.  When he did not find it at the top of the staircase, he checked the second-floor bedrooms.  In the back bedroom, a

small child was sitting on a bed. An elderly woman, later identified as Thelma Shelton, stood in the doorway of the front bedroom; a small child stood behind her. Ms. Fraizer emerged from the back corner of the front bedroom and rushed toward Officer Skinner holding a "fairly large screwdriver," approximately "10 inches or so" in length. *Id.* at 80. She pointed the screwdriver toward Officer Skinner and shouted, "it's a screwdriver." *Id.* Officer Skinner took the screwdriver from Ms. Fraizer, placed her in handcuffs, and handed her over to other officers who had arrived at the scene. He then searched the back corner of the bedroom where Ms. Fraizer had been standing. He observed an empty laundry basket sitting next to a pile of dirty laundry; the laundry covered an air vent in the floor. Officer Skinner pushed the laundry aside and found a "small, black handgun" inside the air vent. *Id.* at 79.

{¶ 9} Officer Skinner then placed appellant under arrest. During a search incident to arrest, he recovered from appellant's pocket a wallet containing two white pills. He secured appellant in the back of his police cruiser. According to Officer Skinner, appellant said "something to the effect that he had some pills amongst his property that he believed to be Percocet." *Id.* at 89-90.[1]

{¶ 10} On cross-examination, Officer Skinner was asked to verify that appellant's specific statement was "[t]here may be some Percs in there." *Id.* at 91. Officer Skinner testified, "[w]ithout hearing the audio, I wouldn't say for sure * * * but that could be reasonable."

{¶ 11} Following appellant's arrest, Columbus Police Detective Melanie Stevens interviewed him at police headquarters. During that interview, appellant admitted that he had taken Percocet in the preceding 12-24 hours.

{¶ 12} On cross-examination, Detective Stevens acknowledged that she submitted a request to the Columbus Police Crime Laboratory ("crime lab") to have the gun that had

---

[1] At trial, the state played State's Ex. M, the video from Officer Skinner's cruiser. Due to technical difficulties, the audio portion of the cruiser video could not be heard. The trial court permitted Officer Skinner to testify to his recollection of appellant's statement, with the proviso that the court could "potentially review" the video at a later time. (Tr. at 89.) The trial transcript does not contain a specific assertion by the trial court that it reviewed State's Ex. M. However, in orally rendering its guilty verdicts, the court expressly stated that it considered, inter alia, "the exhibits submitted by counsel and offered into evidence." (Tr. at 160.) State's Ex. M was submitted by the state and admitted into evidence without objection. (Tr. at 87, 127.)

been recovered from the air vent swabbed for DNA material.  *Id.* at 118, Def.'s Ex. 2.  She further acknowledged that the crime lab reported that swabs taken from the gun were suitable for DNA analysis. Nonetheless, she did not obtain a DNA sample from appellant for comparison purposes.  On redirect, she explained that she did not do so because Officer Hill had witnessed appellant with the gun in his hand.  On recross-examination, she admitted that had someone other than appellant hidden the gun the in the air vent, that person's DNA would have been on it.  *Id.* at 122.  Further, noting that Ms. Fraizer told the officers at the scene that appellant was holding a screwdriver, not a gun, she testified, "I believed the officer."  *Id.*  at 123.

{¶ **13**} In addition to the testimony offered by Officer Hill, Officer Skinner, and Detective Stevens, the parties stipulated that: (1) appellant was convicted in May 2008 of aggravated robbery, a first-degree felony, with a one-year firearm specification, and having a weapon while under disability, a third-degree felony, pursuant to a January 2007 indictment (State's Exs. H and I); (2) the white pills recovered during the search of appellant were tested by crime lab forensic scientist Meredith Sweeney and determined to be "oxycodone hydrochloride 10 milligrams and Acetaminophen 325 milligrams," Schedule II drugs pursuant to R.C. 3719.41 (State's Ex. E); and (3) the gun recovered from the apartment was examined by crime lab forensic scientist Kelby Ducat and found to be operable (State's Ex. F, Def.'s Ex. 3).  At the close of the state's case-in-chief, appellant made a Crim.R. 29 motion for judgment of acquittal.  The trial court denied the motion.

{¶ **14**} Ms. Shelton, appellant's mother, testified on his behalf.  Ms. Shelton had known Ms. Fraizer for several years prior to the incident on September 3, 2016.  On that day, Ms. Fraizer called her and reported that someone had broken into her apartment. Ms. Shelton called appellant and asked him to meet her at Ms. Fraizer's apartment. Ms. Shelton found Ms. Fraizer upstairs in the front bedroom with one of her children. She was holding a "little screwdriver thing" and "was * * * afraid."  *Id.* at 134.  Appellant arrived 15 to 20 minutes later and immediately went upstairs.  He and Ms. Fraizer argued because she accused him of "having somebody do it."  *Id.* at 135.  At appellant's urging, Ms. Fraizer handed the screwdriver to him.  According to Ms. Shelton, appellant wanted the screwdriver so he could confront a group of males standing outside about the break-in.

{¶ 15} Ms. Shelton testified that when the police arrived, she was standing within six feet of appellant at the top of the staircase and could see the screwdriver in his hand. Upon police orders, he placed the screwdriver on the floor at the top of the staircase and then walked down the stairs. She did not see appellant with a firearm that day and had never seen the firearm the police retrieved from the air vent. She acknowledged that she took an oath before the court to tell the truth and denied that she was providing false testimony to save her son.

{¶ 16} On cross-examination, Ms. Shelton acknowledged that appellant previously had been in prison and that the current charges could result in his return to prison. She further conceded that in the three years since the incident, she had never contacted the police or the prosecutor to dispute the charges filed against her son.

{¶ 17} Following closing arguments, the trial court found appellant guilty as charged in the indictment. The court provided a detailed recitation of the testimony presented by both the state and appellant, indicated that it had weighed that testimony, found the testimony provided by Officers Hill and Skinner to be "credible * * * consistent * * * [and] corroborated by * * * all the other evidence [the police] had collected in the aftermath of responding to this call," and afforded "no weight to Ms. Shelton's testimony." *Id.* at 162, 164.

{¶ 18} At a sentencing hearing held on March 4, 2019, the trial court merged the firearm specifications for purposes of sentencing. The court sentenced appellant to 12 months on each count, to run consecutive to each other and to the merged 18-month firearm specification, for a total sentence of 3 and one-half years. The court further ordered the sentence to be served consecutive to a 12-month sentence imposed in Franklin C.P. No. 18CR-06-2723.[2] The court memorialized its guilty verdicts and sentence in a judgment entry filed on March 5, 2019.

{¶ 19} In a timely appeal, appellant advances the following two assignments of error for our review:

> [I]. The trial court erred by overruling appellant's Crim.R. 29 motion for judgment of acquittal, and thereby deprived appellant of due process of law as guaranteed by the Fifth and

---

[2] Immediately prior to sentencing in the instant case, appellant entered a plea of guilty in Franklin C.P. No. 18CR-06-2723 to one count of having a weapon while under a disability in violation of R.C. 2923.13.

Fourteenth Amendment[s] to the United States Constitution and comparable provisions of the Ohio Constitution.

[II]. The trial court erred by finding appellant guilty and thereby deprived appellant of due process of law as guaranteed by provisions of the Ohio Constitution because the verdict of guilty was against the manifest weight of the evidence.

{¶ 20} Appellant's first assignment of error asserts that the trial court erred by denying his Crim.R. 29(A) motion for judgment of acquittal on both aggravated possession of drugs with a firearm specification and having a weapon while under disability with a firearm specification.

{¶ 21} A Crim.R. 29(A) motion for judgment of acquittal tests the sufficiency of the evidence. *State v. Reddy*, 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11. In determining whether the trial court erred in denying a Crim.R. 29 motion for acquittal, we apply the same standard applicable to a sufficiency-of-the-evidence review. *Id.*, citing *State v. Darrington*, 10th Dist. No. 06AP-160, 2006-Ohio-5042, ¶ 15.

{¶ 22} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed on sufficiency of the evidence grounds unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at paragraph two of the syllabus.

{¶ 23} In a sufficiency of the evidence inquiry, an appellate court does not assess whether the state's evidence is to be believed, but whether, if believed, the evidence

supports the conviction. *State v. Sieng*, 10th Dist. No. 18AP-39, 2018-Ohio-5103, ¶ 42. Furthermore, the testimony of one witness, if believed by the trier of fact, is enough to support a conviction. *Id.*

{¶ 24} We first address appellant's conviction for aggravated possession of drugs. R.C. 2925.11(A) prohibits any person from knowingly obtaining, possessing, or using a controlled substance. If the substance is included under Schedule II, an offender is guilty of aggravated possession of drugs. *State v. Dilo*, 10th Dist. No. 16AP-324, 2018-Ohio-2316, ¶ 19; R.C. 2925.11(C)(1).

{¶ 25} The state presented evidence establishing that the white pills recovered from appellant's person were tested and determined to be a Schedule II substance under R.C. 3719.41. (State's Ex. E.) Appellant does not dispute this evidence; rather, he contends that the state failed to prove that he "possessed" the drugs.

{¶ 26} R.C. 2925.01(K) defines "possess" or "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Appellant maintains that the state utilized appellant's admission of recent Percocet use to prove that he possessed the drugs at the time of his arrest. To be sure, Detective Stevens testified that appellant admitted to taking Percocet in the 12 to 24 hours preceding his arrest. However, that is not the only evidence the state presented on the possession issue. Officer Skinner testified that while appellant was seated in the back of the police cruiser, he admitted that he "had some pills amongst his property that he believed to be Percocet." (Tr. at 89-90.) Appellant's out-of-court statement was admissible for the truth of what it asserted because, under Evid.R. 801(D)(2), it was a non-hearsay admission of a party opponent. *Dilo* at ¶ 22. Such a statement may be offered against a defendant " 'as substantive evidence of his guilt.' " *Id.*, quoting *State v. Moody*, 2d Dist. No. 26926, 2016-Ohio-8366, ¶ 68. Appellant's admission permitted the trial court, as the trier of fact, to conclude beyond a reasonable doubt that he knowingly possessed a Schedule II substance at the time of his arrest. *Id.*, citing *State v. Robinson*, 8th Dist. No. 105667, 2018-Ohio-285, ¶ 22 (affirming conviction for possession of drugs under R.C. 2925.11 based on the defendant's statements "made to police officers confirming his possession"). *Id.* at ¶ 6. In light of appellant's statement to Officer Skinner and the physical evidence of the

Schedule II drugs found in his wallet, the record contains sufficient evidence, if believed, to convict appellant of aggravated possession of drugs under R.C. 2925.11(A) and (C)(1).

{¶ 27} We turn next to appellant's conviction for having a weapon under disability. Such offense is defined in R.C. 2923.13, in relevant part, as follows: "(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (2) [t]he person * * * has been convicted of any felony offense of violence."

{¶ 28} Appellant concedes that he has a disqualifying conviction for purposes of having a weapon while under disability. Indeed, appellant stipulated at trial a previous conviction for aggravated robbery with a firearm specification. Aggravated robbery is a first-degree felony offense of violence. *State v. Hall*, 10th Dist. No. 08AP-939, 2009-Ohio-2277, ¶ 5.

{¶ 29} Appellant claims that the state did not prove that the object he had in his right hand while standing at the top of the staircase was a firearm. Appellant's argument completely overlooks the trial testimony of Officers Hill and Skinner. Officer Hill averred that the object in appellant's right hand was a ".380 size pistol." (Tr. at 50.) Officer Skinner testified that Officer Hill reported to him that appellant had dropped "possibly a .380 in caliber" gun at the top of the staircase. *Id.* at 77. A firearm matching that description was recovered from the air vent in the front bedroom, and appellant stipulated that the firearm was operable. In light of the testimony provided by Officers Hill and Skinner, the physical evidence of the firearm and its operability, and the stipulated evidence of appellant's prior conviction for a felony offense of violence, the record contains sufficient evidence, if believed, to satisfy the elements of R.C. 2923.13.

{¶ 30} With regard to the firearm specifications, R.C. 2941.141(D) requires imposition of an 18-month mandatory prison term on an offender when the offender "had a firearm on or about the offender's person or under the offender's control while committing the offense and that the offender previously had been convicted of or pleaded guilty to a firearm specification of the type described in section R.C. 2941.141, 2941.144, 2941.145, 2941.146, or 2941.412 of the Revised Code." As noted above, Officer Hill testified that she saw appellant holding a gun at the top of the staircase. Officer Skinner testified that Officer Hill told him that appellant had a gun and described that gun to him. Officer

Skinner found a gun matching the description provided by Officer Hill in a bedroom air vent. Appellant stipulated that he previously had been convicted of a firearm specification. Thus, the state produced sufficient evidence, if believed, to support appellant's conviction of the firearm specifications pursuant to R.C. 2941.141(D).

{¶ 31} For the foregoing reasons, the trial court did not err by denying appellant's Crim.R. 29 motion for judgment of acquittal on aggravated possession of drugs with a firearm specification or having a weapon while under a disability with a firearm specification.

{¶ 32} Accordingly, appellant's first assignment of error is overruled.

{¶ 33} Appellant's second assignment of error claims that his convictions for having a weapon while under disability and the firearm specifications attached to both counts in the indictment were not supported by the manifest weight of the evidence. Appellant specifically contends that the manifest weight of the evidence does not support the trial court's determination that the object he had in his hand at the top of the staircase was a firearm.

{¶ 34} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins*, 78 Ohio St.3d at 387. Although there may be sufficient evidence to support a judgment, a court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Id.*

{¶ 35} When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983.) An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 36} In addressing a manifest weight of the evidence argument, an appellate court may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, citing *Martin* at 175. However, in conducting such review, a reviewing court is guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Thus, a reviewing court must afford great deference to the trier of fact's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55.

{¶ 37} Appellant contends that Officer Hill's testimony that she observed appellant with a gun in his hand at the top of the staircase was not credible because she observed him from 15 to 20 feet away and the staircase had "just one, signal [sic] lightbulb illuminating the area." (Appellant's Brief at 12.) However, Officer Hill testified that the lighting on the staircase was "dim," but "not dark at all." (Tr. at 45.) She further testified that the incident occurred at approximately 3:45 p.m., i.e., during daylight hours. This testimony contradicts appellant's suggestion that the lighting conditions in the apartment hindered Officer Hill's perception of the object in appellant's hand.

{¶ 38} Appellant further argues that because Officer Hill's "adrenaline was at an all-time high" when she entered an unfamiliar residence alone (other than with Officer Skinner), her perception of the object in appellant's hand "certainly could be flawed." (Appellant's Brief at 12.) However, Officer Hill testified that she had come across "hundreds" of firearms in the course of her eight-year career with the Columbus Police Department. Officer Hill's experience as a police officer and her concomitant familiarity with firearms belies appellant's contention.

{¶ 39} Appellant also challenges Officer Hill's testimony based on the fact that Ms. Fraizer told the officers the object was a screwdriver and physically handed the screwdriver to them. However, we note Officer Hill's testimony that Ms. Fraizer initially stated that the object appellant held was a gun that belonged to her. Further, Officer Hill testified that she did not mistake the gun for a screwdriver and that she had "quite a bit" of experience with firearms. (Tr. at 55-56.)

{¶ 40} Officer Hill's testimony permitted the trial court to infer that her identification of the object in appellant's hand as a gun rather than a screwdriver was reasonable, given her considerable experience as a police officer dealing with firearms, that the incident occurred during daylight hours, and that the staircase was not so dimly lit as to render her identification of the object impossible.

{¶ 41} Appellant further notes Ms. Shelton's trial testimony that the object in appellant's hand was a screwdriver and that she observed that same screwdriver in Ms. Fraizer's hand. However, Ms. Shelton's testimony conflicted with Officer Hill's testimony that the object was a firearm. Further, Ms. Shelton's description of the screwdriver as "little" conflicted with Officer Skinner's testimony describing the screwdriver as "fairly large," and approximately ten inches in length. *Id.* at 80.

{¶ 42} As noted above, the trial court, in pronouncing its guilty verdicts, indicated that it found the testimony of Officers Hill and Skinner to be "credible" and "consistent." *Id.* at 162. The trial court further found that Ms. Shelton's "bias" and "motive to not be completely forthcoming" were "obvious"; accordingly, it afforded "no weight" to her testimony. *Id.* at 163-64.

{¶ 43} Appellant further contends that the state's failure to submit the gun for DNA analysis rendered the trial court's verdicts against the manifest weight of the evidence. In support of this argument, appellant notes Ms. Shelton's testimony that Ms. Fraizer's nephew stayed at the apartment prior to his incarceration. Appellant argues that the nephew may have placed the gun in the air vent prior to his incarceration and that DNA analysis of the gun may have linked him to it.

{¶ 44} Initially, we reiterate that the trial court attributed "no weight" to Ms. Shelton's testimony; ostensibly, such would include her testimony regarding Ms. Fraizer's nephew. Further, this court has concluded that "a lack of physical evidence, standing alone, does not render appellant's conviction against the manifest weight of the evidence." *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21, citing *State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12. " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other physical evidence does not render the conviction against the manifest weight of the evidence.' " *Id.*, quoting *State v. Jackson*, 7th Dist. No. 09 JE 13, 2009-Ohio-6407, ¶ 16.

{¶ 45} In *State v. Peters,* 10th Dist. No. 13AP-748, 2014-Ohio-1071, this court found that "the lack of physical evidence linking [the defendant] to the recovered handgun does not, by itself, preclude a conviction for having a weapon while under disability." *Id.* at ¶ 12. The trial court in *Peters* relied on testimony provided by police officers to find the defendant guilty. Those officers testified that they observed the defendant holding a handgun. As in *Peters,* the evidence in this case establishes that Officer Hill observed a gun in appellant's hand and that the same type of gun was found at the scene.

{¶ 46} Further, the decision by the police not to test the gun for the presence of DNA did not render appellant's convictions against the manifest weight of the evidence. When Detective Stevens was asked to explain why DNA analysis was not requested, she testified that it is standard police practice not to conduct DNA analysis where a police officer observes the firearm in the defendant's hand. In rendering its guilty verdicts, the trial court addressed this point, stating, "I would note that although DNA testing was not done in this matter, DNA testing is not necessary. The Court finds that the testimony of Officer Hill was credible and is credible beyond a reasonable doubt and is worthy of belief. The testimony of Officer Skinner is credible beyond a reasonable doubt and is worthy of belief." (Tr. at 164-65.)

{¶ 47} Further, as this court noted in *Peters,* courts have upheld convictions for having a weapon while under disability even in cases where the weapon was not recovered by the police. *Id.,* citing *State v. Bloodworth,* 9th Dist. No. 26346, 2013-Ohio-248, ¶ 16-22 (holding that witness testimony was sufficient to support having a weapon while under disability conviction where no weapon was recovered) and *State v. White,* 8th Dist. No. 90839, 2008-Ohio-6152, ¶ 8-16 (holding that witness testimony was sufficient to support having a weapon while under disability conviction and that conviction was not against the manifest weight of the evidence where no weapon was recovered).

{¶ 48} In this case, the gun recovered from the air vent matched Officer Hill's description of the gun she observed in appellant's hand. Further, the location of the recovered gun, i.e., in an air vent underneath a pile of laundry, next to an empty laundry basket, strongly suggests that the gun was recently hidden in an effort to avoid detection by the police. Indeed, the trial court stated as much in rendering its guilty verdicts: "I think the Court can certainly infer that Ms. Fraizer took the gun once it was dropped and placed

it in the vent to avoid detection. The fact that * * * Officer Hill did not see it being placed in there does not make * * * her testimony not worthy of belief." (Tr. at 163.)

{¶ 49} "The trier of fact is free to believe or disbelieve any or all of the testimony presented." *State v. Kurtz,* 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 31, citing *State v. Jackson*, 10th Dist. No. 06AP-1267, 2008-Ohio-1277, ¶ 11. Accordingly, " '[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was offered at trial.' " *Id.*, quoting *State v. Favor*, 10th Dist. No. 08AP-215, 2008-Ohio-5371, ¶ 10, citing *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831. Further, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the state's version of the events over the appellant's version. *State v. Rankin,* 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 29, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, citing *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7.

{¶ 50} Although appellant presented evidence, through the testimony of his mother, that the object he held while standing at the top of the staircase was a screwdriver and not a gun, the trial court, as trier of fact, was not required to believe that testimony. The trial court was free to consider the conflicting evidence and make threshold determinations as to weight and credibility. The trial court expressly stated that it had done so and that its consideration of the evidence weighed in favor of the state. Our independent review of the evidence in this case, including the testimony of appellant's mother, convinces us that the trial court did not lose its way and create a manifest injustice in finding appellant guilty of having a weapon while under disability and the firearm specifications charged in the indictment. Accordingly, we conclude that those convictions were not against the manifest weight of the evidence.

{¶ 51} Appellant's second assignment of error is overruled.

{¶ 52} Although we have overruled both of appellant's assignments of error, we sua sponte address two errors in the trial court's March 5, 2019 judgment entry. The first concerns an error in the court's recordation of its guilty verdict pursuant to R.C. 2925.11. The judgment entry states, "the Court returned a verdict finding the Defendant guilty of

Count One of the indictment, to wit: **POSSESSION OF DRUGS WITH FIREARM SPECIFICATION**, a violation of R.C. 2925.11, and a Felony of the Fifth Degree." (Emphasis sic.)  (Mar. 5, 2019 Jgmt. Entry at 1.)  However, Count 1 of the indictment charged appellant with *aggravated* possession of drugs resulting from appellant's possession of a Schedule II substance.  A nunc pro tunc order corrects a judicial entry that contains an error in the recordation of a court's decision.  *State v. Jama*, 189 Ohio App.3d 687, 2010-Ohio-4739, ¶ 14 (10th Dist.), citing *State v. Nye*, 10th Dist. No. 95APA11-1490 (June 4, 1996).  Such an order corrects errors that are merely clerical and do not involve legal determinations.  *Id.*, citing *Warren v. Warren*, 10th Dist. No. 09AP-101, 2009-Ohio-6567, ¶ 7, 11.  A nunc pro tunc order shall not modify a court's judgment or render a decision on a matter when none was made.  *Id.*, citing *Nye.* Accordingly, a judgment entry corrected by a nunc pro tunc order must reflect what the court had actually decided, not what the court might or should have decided.  *Id.*, citing *State ex rel. Mayer v. Henson,* 97 Ohio St.3d 276, 2002-Ohio-6323, ¶ 14.  A nunc pro tunc order is limited to memorializing what the court previously decided.  *Id.*, citing *Norris v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-762, 2006-Ohio-1750, ¶ 12.

{¶ 53}  We find that the trial court's failure to state in the judgment entry that it returned a verdict finding appellant guilty of *aggravated* possession of drugs constituted a clerical error subject to correction through a nunc pro tunc order.  Such an order would not modify the court's judgment or render a decision on a matter when none was made.  Indeed, in orally rendering its verdict, the trial court stated, "The Court finds that the State has proven beyond a reasonable doubt each and every element of the offense of possession of drugs; that the defendant knowingly used or possessed a controlled substance, a Schedule * * * I or II substance[;] * * * [t]herefore, the court will render a verdict of guilty as to Counts One and Two and all firearm specifications."  (Tr. at 164.) A nunc pro tunc order correcting the judgment entry would memorialize what the trial court had actually decided, i.e., that the state proved beyond a reasonable doubt that appellant used or possessed a Schedule II controlled substance and was thus guilty of aggravated possession of drugs.  *Id.*

{¶ 54}  Similarly, the second error is clerical and thus subject to correction by nunc pro tunc order.  In its judgment entry, the court stated that "a Court trial commenced on February 18, 2019 and Finished on February 20, 2019 * * * [and] the Court returned a

verdict finding the Defendant guilty * * *." However, the court followed this statement with a seemingly inconsistent assertion, that is, that it "found Defendant guilty of the charges to which the plea entered." (Mar. 5, 2019 Jgmt. Entry at 1.) Given these irreconcilable statements, the trial court must provide clarification via nunc pro tunc order.

{¶ 55} Accordingly, having overruled appellant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, and remand the matter to that court for the limited purpose of entering a nunc pro tunc order correcting the aforementioned errors in the judgment entry.

*Judgment affirmed; case remanded with instructions.*

SADLER, P.J., and BRUNNER, J., concur.

_____