JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Jimmy White appeals from a judgment of conviction on two counts of having a weapon under disability and attendant firearm specifications. The charges arose when, in the course of an ongoing dispute with some neighbors, he allegedly shot at the neighbors' house on two separate occasions. He complains that the conviction is against the manifest weight of the evidence and that his aggregate 10-year sentence is so lengthy under the circumstances as to constitute cruel and unusual punishment. We find no error and affirm.
 {¶ 2} The indictment charged that on two separate occasions, White discharged a firearm into a house that had a number of different occupants present. Testimony showed that these victims had seen a group of young men who lived on the street. Among them was White's stepson. The young men were cleaning out the bed of a pickup truck and throwing trash on the ground. A number of people were on the porch of the house, and one of them told the young men to pick up their trash. The young men responded by name-calling and throwing empty bottles at the house. A fight broke out with as many as 30 people involved, including White. The police were called and restored order by telling the victims to go inside their house. After the police left, White told the victims that "I'm going to show you all how to jump somebody. You all don't know what the F you all messing with." *Page 4 
 {¶ 3} White came back about five minutes later and, while holding a gun, stood directly in front of the victims' house and said, "[w]e about to shoot this house up." White then spoke on his cell phone and a gold car soon arrived. Gunshots were fired from the gold car at the house, and three witnesses saw White holding a gun. The occupants fled inside the house for cover as between 10 and 20 shots were fired.
 {¶ 4} The police responded but did not locate White. When they knocked at his door, a woman answered and appeared surprised to hear that there had been a shooting. They stopped a gold car that drove down the street, but none of the victims were able to identify any of the occupants of the gold car as having shot at them. The scientific investigation unit took pictures of the victims' house, documenting as many as 14 different entry holes in the house.
 {¶ 5} The following day, some of the victims were sitting on the porch when White and his stepson walked by the house. He started to mock them and told them "it ain't over yet." A witness said that White then stepped into the street and fired a single shot at the house that passed through a second-floor bedroom.
 {¶ 6} The police were called again. They knocked on White's door and a woman answered. Before the police could say anything, the woman said "he didn't shoot nobody" and "the bitch was lying." The police thought these remarks were odd because they were unprompted. White appeared with his *Page 5 
hands up, but he was not wearing the same shirt that had been described to the police; instead, he was wearing a wrinkled shirt that he had just put on. He told the police that "I don't want any problems." The police patted him down and placed him in a police car. They later recovered the bullet from the bedroom of the victims' house.
 {¶ 7} The state charged White with 10 counts of felonious assault, two counts of improperly discharging a firearm at or into a habitation, and two counts of having a weapon under disability. All of the counts contained one and three-year firearm specifications. White chose to have the disability counts tried to the court, but submitted the remaining counts to the jury. The jury returned not guilty verdicts on all submitted counts and the court found White guilty of the two disability counts, with the attendant firearm specifications.
 I {¶ 8} In a combined argument relating to the weight and sufficiency of the evidence on the weapons disability counts, White complains that no reasonable trier of fact could find that he possessed or discharged a firearm.[1]
 A {¶ 9} When reviewing a claim that there is insufficient evidence to support a conviction, we view the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential *Page 6 
elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 10} R.C. 2923.13(A)(2) provides that no person who has been convicted of any felony offense of violence shall "knowingly acquire, have, carry, or use any firearm." The state presented testimony from three witnesses who saw White in possession of a firearm on the day of the first shootings. Another witness testified that she saw White holding a gun on the day of the second shooting. Viewing this evidence in a light most favorable to the state, it was sufficient to prove that White possessed a firearm for purposes of R.C. 2923.13(A)(2).
 B {¶ 11} White next argues that the verdict was against the manifest weight of the evidence. He maintains that the evidence was inconsistent as to who fired the shots that struck the victims' house, that the police did not recover a firearm from him, and that police failed to conduct any gunshot residue tests to confirm whether he actually fired a gun.
 {¶ 12} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten
(1986), 33 Ohio App.3d 339, 340. The use of the *Page 7 
word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 13} White's primary argument is a statement by the court, made before it made any findings on the disability counts, that the jury foreperson had told it that the jury believed that White had committed the felonious assaults, but "they just couldn't prove that he was the person who actually fired which shots." White maintains that a guilty finding on the disability counts would be inconsistent with the jury's not guilty findings on felonious assault.
 {¶ 14} The distinction between the charged offenses is that having a weapon under disability only requires a showing that White possessed a firearm, not that White actually discharged the firearm. If the jury did find White not guilty of felonious assault because it did not believe there was proof beyond a reasonable doubt to show that he fired his firearm, that finding would not be inconsistent with proof that he actually possessed the firearm. One can possess a firearm without firing it and, in fact, need not be in actual physical contact *Page 8 
with the firearm as long as the firearm is readily at hand. SeeState v. Teachout, Lake App. No. 2006-L-081, 2007-Ohio-1642, ¶ 50.
 {¶ 15} We likewise reject White's argument that the state's failure to produce a weapon of any kind, coupled with its failure to prove the existence of gunshot residue on his hands, shows that the court erred by finding him guilty of having a weapon. The police did not arrive on the scene during the shooting, but sometime after the shooting occurred. That interval presumably gave White time to dispose of any firearm. Indeed, the testimony showed that White had time to change a shirt, so he may well have had enough time to hide a firearm. In any event, the state's failure to offer a firearm into evidence did not negate eyewitness testimony that White possessed a firearm during both shooting incidents. Likewise, any inconsistencies by the state's witnesses concerning the number of shots fired, the number of gunmen, and the color of White's firearm were of no consequence.
 {¶ 16} Finally, we reject White's argument that the witnesses lacked credibility because they had a personal interest to advance by their testimony. While it is true that the shootings resulted from the bad blood that arose because of the fight, the witnesses testified that they had been on friendly terms with White's family before the shootings. At any rate, the court was in the best position to evaluate the credibility of each witness when issuing its judgment on the disability charge, and we have no basis for overturning the court's credibility *Page 9 
assessment. Having no basis for concluding that the court lost its way by finding White guilty of having a firearm on his person while under disability, we overrule the first assignment of error.
 II {¶ 17} White next complains that his sentence was so excessive that it constitutes cruel and unusual punishment. He argues that he was not convicted of the felonious assault charges, but that the court appeared to have punished him as though he had been convicted of those counts.
 {¶ 18} In State v. Hairston, 118 Ohio St.3d 289, 2008-Ohio-2338, the syllabus states: "Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." The supreme court explained that cruel and unusual punishment cases "are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person" and that "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." Id. at ¶ 14 (internal quotations and citations omitted). When reviewing a cruel and unusual punishment challenge, we look only at each individual sentence, not the "stacking" of individual sentences into an aggregate term. Id. at ¶ 17. *Page 10 
 {¶ 19} The court merged the various firearm specifications into a single three-year prison term and ordered them to be served prior to and consecutive with a two-year prison term for the first weapon under disability count. The court sentenced White to a five-year prison term on the second weapon under disability count, with that prison term to be served consecutive to all other counts, for a total prison term of 10 years.
 {¶ 20} Apart from merging the various one and three-year firearm specifications into a single three-year term of imprisonment, the court had no discretion to order them served concurrent with their underlying offenses. See R.C. 2929.14(E)(1)(a). The prison terms for the firearm specifications were required as a matter of law, so they could not be considered grossly disproportionate.
 {¶ 21} We likewise find that the two and five-year terms for the weapon under disability counts were not grossly disproportionate. Having a weapon under disability is a third degree felony. Third degree felonies are punishable with a prison term of one, two, three, four or five years, see R.C. 2929.14(A)(3), so White's two and five-year prison terms were within statutory limits. Neither were these terms so independently lengthy as to be shocking to the community's sense of justice. Eyewitness testimony showed that White precipitated the shootings by warning the victims after the street brawl finished that "it ain't over yet." Evidence demonstrated that White set in motion a series of events *Page 11 
that culminated in two separate shooting incidents. Even though the jury found White not guilty of felonious assault, his actions caused the shooting, and 14 bullet holes in the victims' home left no doubt that a shooting occurred. Given these facts, the court's decision to impose two and five-year sentences on the weapon disability counts was not grossly disproportionate.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] White makes no argument about his disability to possess a firearm. *Page 1