[Cite as *State v. Hunt*, 2023-Ohio-962.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-40 |
| | : | |
| v. | : | Trial Court Case No. 21-CR-0165A |
| | : | |
| DAVON L. HUNT | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 24, 2023

. . . . . . . . . . .

IAN A. RICHARDSON, Attorney for Appellee

FRANK MATTHEW BATZ, Attorney for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Davon L. Hunt appeals from his conviction in the Clark County Court of Common Pleas after he was found guilty of discharge of a firearm on or near a prohibited premises (with a firearm specification), having weapons while under disability, and carrying a concealed weapon. He was sentenced to a total of 10½ years

in prison. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.      Facts and Procedural History

{¶ 2} On the evening of March 5, 2021, the Mini Mart at 961 Selma Road in Springfield was a busy place, with many customers entering and exiting the store, and others simply loitering in the parking lot in front of the entrance. Hunt and his three associates were among those hanging out in the parking lot.

{¶ 3} At approximately 8:21 p.m., Arlie Addis, Jr. was driving south on Selma Road directly in front of the Mini Mart in his 2010 Chevy Silverado truck when shots rang out from the store's parking lot. Addis heard the gunfire and attempted to accelerate past the area to avoid the danger. As he sped up, however, he heard more shots and then heard a "thud" as his car was struck on the passenger side door by a bullet. Addis continued driving to the Sunoco gas station on corner of Selma and Sunset Avenue, where he found two Springfield police officers. He informed the officers about what had just transpired, and law enforcement was dispatched to the Mini Mart.

{¶ 4} When officers arrived, they first made sure there were no victims in or around the building. Once it was determined that no one needed medical care, Officer Allison Craig looked for cartridge casings, and Officer Tim Melvin went inside to view the store's surveillance footage. Upon viewing the videos from the front and side of the store, Officer Melvin immediately recognized several individuals, including Hunt. Officer Craig located a large number of casings in the front parking lot on the north side of the building, as well as casings on the Oak Street (east) side.

{¶ 5} Based on the surveillance footage, Hunt became a suspect, but he was not

immediately apprehended. When he was finally arrested several months later, he was indicted (in this case) on: Count 1 – discharge of a firearm on or near a prohibited premises, a felony of the third degree; Count 2 – having weapons while under disability, a felony of the third degree; and Count 3 – carrying a concealed weapon, a fourth-degree felony. A firearm specification was associated with Count 1.

{¶ 6} After an unsuccessful motion to suppress, on December 7-8, 2021, the case proceeded to a jury trial. There, the jury heard testimony from Addis, multiple Springfield police officers involved in collecting evidence in the case, and Detective Ron Jordan. Hunt did not testify. The jury also considered dozens of exhibits, including surveillance video of the incident, bullets and cartridge casings, pictures of the crime scene, and photos of Addis's damaged truck. After approximately three hours of deliberation, the jury found Hunt guilty of all charges and the specification.

{¶ 7} Hunt was sentenced on April 22, 2022 after several delays due to COVID and a change in defense counsel. The trial court considered the presentence investigation report and statements from counsel on both sides; Hunt was sentenced to 36 months on Count 1, 36 months on Count 2, and 18 months in prison on Count 3. Additionally, a mandatory, consecutive three-year term was imposed for the firearm specification attached to Count 1. The court then ordered all sentences be served consecutively, for a total of 10½ years in prison.

{¶ 8} Hunt has filed a timely appeal with two assignments of error, which we will consider together.

## II.     Sufficiency and Manifest Weight of the Evidence

{¶ 9} Hunt raises two related assignments of error: that his convictions were against the manifest weight of the evidence and were based upon insufficient evidence.

{¶ 10} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). It is essentially a test of adequacy: whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

{¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 12} On the other hand, when an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio

App.3d 172, 175 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs *heavily* against the conviction.' " (Emphasis added.) *Id.*

{¶ 13} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2d Dist. Montgomery No. 28950, 2022-Ohio-1421, ¶ 50.

Discharge of a firearm on or near prohibited premises

{¶ 14} Hunt's conviction for discharge of a firearm on or near prohibited premises is, in many ways, the cornerstone of his other convictions; the facts set forth to prove this crime are vital to the others. R.C. 2923.162(A)(3) states that no person shall discharge a firearm upon or over a public road or highway. Basically, the State had to prove that Hunt had a gun and that he fired it over a roadway. That burden was met.

{¶ 15} Detective Jordan testified that after he was assigned to the Mini Mart shooting, he collected surveillance videos from multiple cameras around the store. In a video from a camera on the front of the store (facing Selma), Hunt can be seen at the 8:20:38 p.m. mark wearing blue jeans, which were torn in the front, distinctive blue and white Nike tennis shoes, and a dark-colored Nike hoodie with a swoosh on the front. The

view of his face was unobstructed. Both Detective Jordan and Officer Melvin testified that they immediately recognized Hunt.

**{¶ 16}** The jury also saw video footage from a camera on the side of the store beginning at 8:21:39 p.m. The video showed Hunt pull an object from his waistband, and then two seconds later, he is seen with his right arm extended, pointing across Oak Street toward Selma. Officer Melvin noted that he saw Hunt "kind of duck down behind the vehicle," and then "[h]e reaches up and starts shooting." Trial Tr. at 121. At 8:21:43 p.m., Hunt's arm is still raised, and another individual is seen with a gun in his hand, arm pointing in the same direction as Hunt. At 8:21:45 p.m., a third individual is seen with a firearm. A moment later, they take off running toward the front of the store and out of that camera's view.

**{¶ 17}** The front-of-the-store camera picked the men back up, and the video shows Hunt running across the parking lot with his arm pointing toward Selma. Detective Jordan testified, "If you look here at the right hand, you can actually see what appears to be a firearm in his hand. You can see the top slide of the firearm and the back of the firearm where his thumb and finger would be pictured here." Trial Tr. at 165. Detective Jordan further noted that he believed the video shows a muzzle flash from Hunt's weapon.

**{¶ 18}** Around that same time, at 8:21:36-40 p.m., a camera on the front of the Mini Mart captured a truck driving south down Selma. This truck was the Chevy Silverado driven by Addis that was struck by a bullet on the passenger side door, just below the mirror.

**{¶ 19}** Based on the surveillance footage, testimony of Springfield officers, and the

abundance of cartridge casings found on both the Selma and Oak Street sides of the Mini Mart, the jury could have reasonably found that Hunt had a gun and that he fired it. Based on the footage alone, it would be hard to come to any other conclusion. As to whether he fired upon or over a public road or highway, that was shown by the testimony of Addis, the damage to his truck, and the surveillance footage showing his truck driving down Selma at the same time the shots were fired.

{¶ 20} Nevertheless, Hunt argues that the State failed to meet its burden because a gun was never produced. As to the production of the gun, it is well established that a conviction for gun crimes can stand even if no gun is ever recovered. *See State v. Sanders*, 11th Dist. Lake No. 2011-L-024, 2012-Ohio-400, ¶ 41 (no gun is required to support a conviction for discharging a firearm at or into a habitation, a related crime from the same statute as here); *State v. Marshall*, 5th Dist. Richland No. 03-CA-106, 2005-Ohio-931, ¶ 26-30 (even though neither the gun used nor the bullets fired were discovered, a conviction was upheld when other evidence was presented, including testimony regarding shots being heard and damage consistent with a bullet being fired); *State v. Higginbottom*, 11th Dist. Portage No. 2012-P-0028, 2012-Ohio-5834, ¶ 58 (there is no requirement that the State present physical evidence of a weapon when there is substantial testimonial and circumstantial evidence to justify a conviction); *State v. Leigh*, 2d Dist. Montgomery No. 28821, 2023-Ohio-91, ¶ 34.

{¶ 21} The same is true for a firearm specification: a firearm's existence may be inferred from the surrounding facts and circumstances. *State v. Vann*, 2d Dist. Montgomery No 22818, 2009-Ohio-5308, ¶ 27. "It is not necessary to admit the firearm

used during the crime in evidence in order to establish a firearm specification." *Id.*, citing *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990).

{¶ 22} Based on the record before us, we cannot say that Hunt's convictions for discharge of a firearm on or near a prohibited premises or the attendant firearm specification were based on insufficient evidence or against the manifest weight of the evidence. As to this count (and specification), the assignments of error are overruled.

Having Weapons While Under Disability

{¶ 23} Hunt also argues that his conviction for having weapons while under disability was based on insufficient evidence and against the manifest weight of the evidence.

{¶ 24} R.C. 2923.13(A)(2) states: Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance if the person is under indictment for or has been convicted of any felony offense of violence. Here, the State presented evidence that Hunt had been convicted in Calhoun County, Alabama of robbery (an offense of violence) in case number CC-2016000978.00. (State's Ex. 28, Trial Tr. at 172-173.) Notwithstanding the conviction for an offense of violence, Hunt argues that there was no weapon ever found and he was never tested for gunshot residue (GSR).

{¶ 25} As to the first argument, Hunt is correct that a gun was never recovered, but that fact is not dispositive. Courts have upheld convictions for having a weapon while under disability in cases where the weapon was not recovered by law enforcement. *State v. Freeman*, 10th Dist. Franklin No. 19AP-181, 2020-Ohio-3381; *State v. Bloodworth*, 9th

Dist. Summit No. 26346, 2013-Ohio-248 (holding witness testimony was sufficient to support having weapons while under disability conviction when no gun was recovered); *State v. While*, 8th Dist. Cuyahoga No. 90839, 2008-Ohio-6152 (holding witness testimony was sufficient to support having weapons while under disability conviction). In this case, based on the video evidence and the testimony from Officer Melvin and Detective Jordan, the jury reasonably found that Hunt had possessed a firearm. Hunt's second argument, that he was never tested for GSR, fails because he was arrested months after the Mini Mart shooting occurred; no one could logically expect to find GSR from that incident still on his person.

{¶ 26} We cannot say that Hunt's conviction for having weapons while under disability was based on insufficient evidence or against the manifest weight of the evidence. As to this count, the assignments of error are overruled.

Carrying A Concealed Weapon

{¶ 27} While Hunt does not make any specific arguments regarding his conviction for carrying a concealed weapon, we can conclude that it was based on sufficient evidence and not against the manifest weight of the evidence.

{¶ 28} To support a guilty verdict on Count 3, the State had to prove that Hunt knowingly carried or had, concealed on his person, or concealed ready at hand, a handgun other than a dangerous ordinance. R.C. 2923.12(A)(2). This burden was met by the presentation of video evidence from surveillance cameras and testimony of Detective Jordan. State's Ex. 18, Channel 7, Clip 1, at 8:21:39-41 p.m. shows the moments just before and just after the shooting began. Hunt is seen at the beginning of the clip without

any visible weapon, then the video shows him retrieve an object from around his mid-section and extend his right arm in a manner that leaves no doubt what he was doing. In subsequent camera angles (from just a few seconds later), Hunt is seen running with a gun and firing across the street. Additionally, Detective Jordan testified during both direct and cross examinations that it was his belief that Hunt had reached into his waistband and pulled out a firearm.

{¶ 29} Based on the exhibits and testimony, the jury reasonably concluded that Hunt had the firearm secreted in his waistband and then pulled it out and started firing. The crime's essential elements were proven beyond a reasonable doubt. Additionally, the jury's guilty verdict was not such that it created a manifest miscarriage of justice. Hunt's conviction for carrying a concealed weapon was based on sufficient evidence and was not against the manifest weight of the evidence. As to this count, the assignments of error are overruled.

### III. Conclusion

{¶ 30} Having found that Hunt's convictions were based on sufficient evidence and not against the manifest weight of the evidence, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


LEWIS, J. and HUFFMAN, J., concur.