[Cite as *State v. Glass*, 2025-Ohio-4670.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114607 |
| v. | : | |
| MYESHA I. GLASS, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 9, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-691927-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian Callahan, Assistant Prosecuting Attorney, *for appellee*.

Wegman Hessler Valore, Dean Valore, and Matthew O. Williams, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Myesha I. Glass ("Glass") appeals her conviction for felonious assault.

For the following reasons, we affirm.

## I. Background and Procedural History

{¶ 2} On May 5, 2024, Glass, Larry Collins ("Collins"), and Barbara Johnson ("Johnson") exchanged words while all parties were shopping at a grocery store. Glass and Johnson engaged in a fist fight that resulted in multiple bones in Johnson's face being fractured.

{¶ 3} As a result of the altercation, on May 20, 2024, Glass and Collins were each charged with one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1).

{¶ 4} The case proceeded to a jury trial. On September 26, 2024, the jury returned a guilty verdict for Glass and a not guilty verdict for Collins. On October 28, 2024, the court sentenced Glass to 18 months of community control.

{¶ 5} Glass appealed, raising the following assignments of error:

1. Appellant was denied effective assistance of counsel where her attorney's misunderstandings of the law left her without a defense.

2. The trial court's failure to instruct the jury on the lesser included offense of assault — knowingly causing physical harm — was plain error.

3. The trial court abused its discretion when it declined to instruct the jury on the inferior offense of aggravated assault and the lesser included offense of assault recklessly causing serious physical harm.

4. The jury's verdict of "guilty" on the charge of felonious assault is against the manifest weight of the evidence.

## II. Trial Testimony

### A. Officer Matthew Dickerson

{¶ 6} Matthew Dickerson ("Ofc. Dickerson") testified that he is a patrol officer for the City of Cleveland. Ofc. Dickerson and his partner responded to a report of a fight inside a Marc's grocery store on May 5, 2024.

{¶ 7} Ofc. Dickerson encountered Johnson near the store's bathroom "cleaning herself up." He stated that Johnson "appeared to be injured" and exhibited "swelling in the right eye area." Ofc. Dickerson called EMS to the scene. He also interviewed Johnson and summarized his observations in a report.

{¶ 8} According to Ofc. Dickerson, Johnson described two other people who were involved in the altercation. He testified that neither of the people Johnson described was still at the scene when he arrived. According to the officer, Johnson described a "female, black, roughly 40 years old, heavier set, wearing all black with short black hair in a ponytail." Johnson also described a "black male, roughly 40 to 50 years old with a black shirt [and] long, black dreads."

{¶ 9} Another witness provided Ofc. Dickerson with license plate information for a black Dodge Ram in which Johnson's assailants purportedly left the store. Ofc. Dickerson also obtained surveillance footage from the store.

{¶ 10} On cross-examination, Ofc. Dickerson admitted that he did not know who started the fight and that he labeled Johnson as the "victim" in his report based on her description of events and the fact that she was injured.

**B. Johnson**

{¶ 11}  Johnson testified that on May 5, 2024, while shopping at Marc's, she "accidentally bumped a couple carts" that other shoppers were pushing.  Per Johnson, two people — stipulated to be Glass and Collins — "called me ignorant and . . . other names" in response.  Johnson believed race may have played a role in the altercation but stated that she would never have used racial slurs while speaking with Glass and Collins.

{¶ 12}  According to Johnson, after the verbal exchange, Glass and Collins "both just started hitting me and punching me and knocked my glasses off, I couldn't see.  When I found them and got back up, I just started to get attacked again and beaten more and more, and I could do nothing to defend myself."

{¶ 13}  During Johnson's direct examination, the State played a surveillance video recorded at the grocery store during the morning of May 5, 2024.  The surveillance footage did not include audio.  Johnson identified herself as the white woman in the video.  The video also shows a black woman and a black man, whom Johnson identified as Glass and Collins, respectively.

{¶ 14}  In the video, Johnson bumped her shopping cart into the scooter that Collins was using.  Johnson and Glass can be seen gesturing towards one another, as though talking.  Glass stepped towards Johnson so that they were standing face-to-face.  Eventually, Glass shoved Johnson backwards.  At that point, Collins walked down the aisle and stood facing the two women, who remained facing each other.

Johnson stepped towards Glass. The two exchanged punches and partially exited the camera's view. The camera partially lost view of Collins, too.

{¶ 15} Glass then walked away from Johnson and picked up her purse, which she dropped while fighting. Collins walked down the aisle, away from both women. At this point, Johnson walked behind Glass and bent down, placing her hand on the floor, as though to pick something up. Glass partially faced Johnson and waited for her to stand up. Glass then punched Johnson in the head several times. Collins and Glass walked away, while Johnson leaned against a grocery display case. Johnson stated that this video accurately depicted the altercation.

{¶ 16} Johnson testified that she spoke with police who arrived at Marc's. An ambulance transported Johnson to Fairview Hospital. She testified that she "had multiple facial fractures. My right orbital eye socket [was] shattered. My sinus tissue is gone . . . so I am getting a lot of infections." Johnson said that for a "couple of weeks," she could not "open [her] eye," or "see anything at all . . . ." She also stated, "My entire face was swollen. I was in a ton of pain." According to Johnson, her injuries prevented her from working "for a couple of weeks."

### C. Sergeant Michael Harper

{¶ 17} Michael Harper ("Sgt. Harper") testified that he is a detective and sergeant for the Cleveland Division of Police. Sgt. Harper testified that he was assigned to investigate the fight between Glass and Johnson.

{¶ 18} Sgt. Harper reviewed Ofc. Dickerson's report and the responding officers' body-camera footage, which "mention" a partial license plate number.

Sgt. Harper searched the plate information using law enforcement databases "a few different ways, including different letters and numbers." A traffic camera located at an intersection "less than a block away" from the grocery store recorded a matching plate that passed "within minutes of when this incident occurred." Sgt. Harper determined that the owner of the vehicle was Collins, who "fit the description" that Johnson had provided of the man involved in the altercation.

{¶ 19} Sgt. Harper generated a "blind photo lineup," in which a photograph of Collins was placed alongside photographs of five other people. He gave the photo lineup to a colleague who had not been assigned to investigate this case and did not know which of the pictured individuals was a suspect in Sgt. Harper's investigation. Johnson identified Collins's photo, believing him to have been involved in the fight.

{¶ 20} Sgt. Harper interviewed Collins, who admitted that he had been present when the fight occurred. He explained that Collins mentioned "he felt that [Johnson] may have been racist," but Sgt. Harper did not recall Collins claiming that Johnson used any racial slurs.

{¶ 21} Sgt. Harper obtained Johnson's medical records, which reflected that Johnson suffered fractures to the right side of her face. He also interviewed Johnson on May 8, 2024. His body-camera footage of this interview captured "bruising around [Johnson's] eye and mouth area."

{¶ 22} On cross-examination, Sgt. Harper stated that he interviewed Glass, who told him that she drove the black Dodge Ram to the store. Glass also told Sgt. Harper that Johnson used racial slurs towards her "repeatedly" prior to the fight.

Sgt. Harper testified that Johnson told him that Glass and Collins kept yelling "white bitch" at her.

**D. Glass**

{¶ 23} Glass testified that she drove Collins's Dodge Ram truck to Marc's grocery store on May 5, 2024. Glass and Collins then shopped together. Glass pushed a cart, and Collins rode an electric scooter.

{¶ 24} Glass stated that she was looking at a display of fruit when she heard Johnson "barging her cart through the aisle." Johnson and Collins then exchanged words. Per Glass, Johnson called her "n****r" multiple times. Glass denied making threats or calling Johnson a "white bitch," as Johnson claimed, stating that she "was trying to de-escalate the situation . . . ."

{¶ 25} Glass stated Johnson "was . . . throwing her hands in . . . [Glass's] face . . . ." Glass claimed that she "pushed [Johnson] out of [her] face," but "did not strike her," after which Johnson "kind of fell back." She testified that as she "was picking my purse up to walk away and as I was walking away, I felt something on my back," which "was Ms. Johnson."

{¶ 26} According to Glass, Johnson "put her hands up, like start[ed] swinging toward my face" as though "she wanted to fight." She stated that she and Johnson then "start[ed] fighting" and were both hitting each other. Glass denied that she thought of injuring Johnson.

{¶ 27} Glass stated she and Collins then left the store and that nobody tried to stop or talk to either of them.

## III. Law and Analysis

{¶ 28} For ease of analysis, we will address Glass's assignments of error out of order.

### A. Assignment of Error No. 4 — Manifest Weight of the Evidence

{¶ 29} We begin with Glass's fourth assignment of error, which asserts that her conviction for felonious assault was against the manifest weight of the evidence. A manifest-weight-of-the-evidence challenge "addresses the evidence's effect of inducing belief," i.e., "whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the Ohio Supreme Court recently explained that

> "sitting as the 'thirteenth juror,' this court looks at the entire record and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'""

*State v. Brown*, 2025-Ohio-2804, ¶ 30, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 30} At trial, the finder of fact is in the "best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony." *State v. Sheline*, 2019-Ohio-528, ¶ 100 (8th Dist.). Reversal on manifest-weight

grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 31} As noted, Glass was convicted of one count of felonious assault. A felonious assault occurs when an offender knowingly causes serious physical harm to another. R.C. 2903.11(A)(1).

{¶ 32} Glass argues that she did not have the required mental state to be convicted of felonious assault because she did not know that her conduct would cause serious physical harm to Johnson. According to Glass, "When two physically similar adults engage in a short fight without weapons, there is no expectation of serious injury." Glass asks us to view this case differently from felonious-assault cases involving "particularly vulnerable" victims specifically a victim of a "surprise attack" that did not fight back or a woman attacked by a man.

{¶ 33} "'A person acts knowingly when he is aware that his conduct will probably cause a certain result.'" *State v. Kessler*, 2010-Ohio-2094, ¶ 17 (8th Dist.), quoting *State v. Reed*, 2008-Ohio-312, ¶ 6 (8th Dist.). "'When a defendant voluntarily acts in a manner that is likely to cause serious physical injury, the factfinder can infer that the defendant was aware that [her] actions would cause whatever injury results from [her] actions, or in other words, that [she] acted knowingly.'" *Id.*, quoting *id.*

{¶ 34} "[C]ourts have recognized that there is an inherent danger of causing serious physical harm when a person hits someone in the face and/or head." *State v. Carson*, 2025-Ohio-166, ¶ 14 (8th Dist.), citing *State v. Jacinto*, 2020-Ohio-3722,

¶ 107 (8th Dist.). "'To be actionable it is only necessary that the result is within the natural and logical scope of risk created by the conduct.' A person need not foresee the precise consequences of criminal conduct." *State v. Hampton*, 2016-Ohio-5321, ¶ 13 (8th Dist.), quoting *State v. Smith*, 2007-Ohio-1884, ¶ 29 (4th Dist.) (finding that a single punch to the victim's head was sufficient to establish the appellant knowingly caused serious physical harm even though the appellant did not know about the victim's unique physical condition that exacerbated the harm).

{¶ 35} Focusing on the fact that she and Johnson both engaged in the fight, Glass ignores Ohio law that

> [w]here two persons agree to fight each other, . . . each may be subject to criminal prosecution for assault; and where the harm visited upon one of the fighters constitutes serious physical harm, the fact that the fight was begun by mutual consent is not a defense, in law, to a charge of felonious assault brought pursuant to R.C. 2903.11(A)(1).

*In re D.W.*, 2002-Ohio-4173, ¶ 48 (8th Dist.), citing *State v. Dunham*, 118 Ohio App.3d 724, 725 (1st Dist. 1997).

{¶ 36} In *Jacinto* this court upheld a felonious-assault conviction where the defendant and victim were involved in a fight between two physically similar adults of the same sex. *See Jacinto* at ¶ 6. The victim told a third person who was restraining the defendant to "[l]et him go. I will fight him," before assuming a fighting stance. *Id.* at ¶ 17. The defendant then punched the victim in the head, causing a brain injury. *Id.*

{¶ 37} Like the victim in *Jacinto*, according to Glass, Johnson "put her hands up," as though "she wanted to fight." Although Glass and Johnson did not verbally

agree to fight, they began to hit each other. Based on her own testimony, Glass voluntarily punched Johnson in the head multiple times.

{¶ 38} The only evidence in the record supporting Glass's claim that she did not have the requisite mental state to warrant her conviction came from Glass herself. Glass testified that she was not thinking of harming Johnson when she punched her repeatedly in the face. The jury saw the video of the fight and heard both Johnson and Glass testify. In addition, the jury heard from the investigating police officers who shared Glass's and Johnson's reactions after the altercation. The jury was free to assess the credibility of the evidence presented. As noted, participation in a consensual fistfight does not preclude a felonious-assault conviction. *See In re D.W.*, 2002-Ohio-4173, at ¶ 48 (8th Dist.). Furthermore, this court has recognized that punching someone in the head and face carries with it the inherent risk of causing serious physical harm, without regard to whether the defendant specifically intended the resulting injury.[1] *See Carson*, 2025-Ohio-166, at ¶ 14 (8th Dist.).

---

[1] The evidence supports the jury's conclusions regarding the felonious-assault element of "serious physical harm." Serious physical harm includes any "physical harm that involves some temporary, substantial incapacity," and "physical harm that involves acute pain of such duration as to result in substantial suffering." R.C. 2901.01(A)(5)(c) and (e). When an "'assault causes a bone fracture, the element of serious physical harm is met.'" *State v. Montgomery*, 2015-Ohio-2158, ¶ 13 (8th Dist.), quoting *State v. Lee*, 2003-Ohio-5640, ¶ 24 (8th Dist.). Johnson's testimony and medical records and the testimony of Ofc. Dickerson and Sgt. Harper all establish that Johnson suffered multiple facial fractures, including a shattered orbital bone. Johnson testified, "My entire face was swollen. I was in a ton of pain." Glass does not dispute that she caused Johnson's injuries. Glass also did not assert that she struck Johnson in self-defense.

{¶ 39} After a thorough review of the record, weighing the strength and credibility of the evidence presented and all reasonable inferences that can be drawn from the evidence, we do not find that the jury clearly lost its way or that this is the extraordinary case where the evidence weighs heavily against conviction. Accordingly, assignment of error No. 4 is overruled.

**B. Assignment of Error No. 2 — Jury Instructions, Plain Error**

{¶ 40} Glass asserts that in addition to giving instructions on felonious assault, the court should have instructed the jury on simple assault. A simple assault occurs when an offender knowingly causes physical harm to another. R.C. 2903.13(A). Physical harm includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "By committing felonious assault under R.C. 2903.11(A)(2), an offender necessarily commits simple assault in violation of R.C. 2903.13(A) . . . ." *State v. Anderson*, 2009-Ohio-3900, ¶ 67 (8th Dist.).

{¶ 41} At trial, Glass's attorney did not request jury instructions regarding simple assault. Consequently, we review the lack of a jury instruction on simple assault for plain error. *State v. Rogers*, 2015-Ohio-2459, ¶ 3. "To prevail under a plain error analysis, the appellant bears the burden of demonstrating, but for the error, the outcome of the trial would clearly have been different." *Id.*, citing *State v. Payne*, 2007-Ohio-4642, ¶ 17.

{¶ 42} "[A] criminal defendant is not automatically entitled to an instruction on a lesser or inferior-degree offense." *State v. Nicholson*, 2024-Ohio-604, ¶ 162.

Such an instruction is warranted where there is "sufficient evidence to permit the jury to reasonably reject the greater offense and find the defendant guilty on the lesser or inferior-degree offense." *Id.* To make this determination, the court must view the evidence "'in the light most favorable to the defendant, without weighing the persuasiveness of the evidence.'" *Id.*, quoting *State v. Shane*, 63 Ohio St.3d 630, 637 (1992).

{¶ 43} The court did not commit plain error by not instructing the jury on simple assault. Glass fractured multiple bones in Johnson's face, which qualifies as serious physical harm. *See Montgomery*, 2015-Ohio-2158, at ¶ 13 (8th Dist.). As we found above, the evidence demonstrated that Glass did so through a voluntary act — striking Johnson in the head — that was likely to cause serious physical harm. Glass therefore caused serious physical harm knowingly under R.C. 2903.11(A). Under these circumstances, Glass has not demonstrated that the trial court committed plain error when it did not instruct the jury on simple assault.

{¶ 44} Accordingly, assignment of error No. 2 is overruled.

### C. Assignment of Error No. 3 — Jury Instructions, Abuse of Discretion

{¶ 45} We next address whether the court abused its discretion in denying Glass's request to instruct the jury regarding aggravated assault, under R.C. 2903.12, and reckless assault, under R.C. 2903.13(B). Again, we note that "[a] charge on a lesser included or inferior offense is required only where the evidence presented at trial would reasonably support both acquittal on the crime charged and a conviction

upon the lesser included or inferior offense." *State v. Carter*, 2018-Ohio-3671, ¶ 59 (8th Dist.), citing *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph two of the syllabus.

{¶ 46} "A trial court's decision to grant or deny a requested jury instruction is reviewed under an abuse of discretion standard." *State v. Hayes*, 2024-Ohio-4679, ¶ 10 (8th Dist.), citing *State v. Ladson*, 2022-Ohio-3670, ¶ 26 (8th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Abdullah v. Johnson*, 2021-Ohio-3304, ¶ 35. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### 1. Aggravated Assault

{¶ 47} Aggravated assault includes the elements of felonious assault, coupled with mitigating circumstances. *State v. Searles*, 2011-Ohio-6275, ¶ 18 (8th Dist.). A felonious assault is lessened to aggravated assault when it is perpetrated "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the [perpetrator] into using deadly force . . . ." R.C. 2903.12(A). "In a trial for felonious assault, an instruction on aggravated assault must be given to the jury if the defendant presents sufficient evidence of serious provocation." *Carter* at ¶ 61, citing *State v. Brown*, 2002-Ohio-148.

{¶ 48} "Whether provocation was reasonably sufficient to prompt sudden passion or a sudden fit of rage involves both an objective and a subjective analysis." *Hayes* at ¶ 15, citing *State v. Phillips*, 2020-Ohio-4748, ¶ 11 (8th Dist.), citing *Shane* 63 Ohio St.3d at 634. "For the objective standard, the alleged provocation by the victim must be reasonably sufficient to incite deadly force, meaning 'it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *Id.*, quoting *id.*, citing *Shane* at 635. "'For the subjective standard, the defendant in the particular case must have actually acted under the influence of sudden passion or in a sudden fit of rage.'" *Id.*, quoting *id.*, citing *Shane* at 634-635.

{¶ 49} Here, Glass did not present sufficient evidence of provocation to warrant an aggravated-assault instruction. Glass argues that Johnson's purported use of racial slurs, gesturing in Glass's face, and bumping her cart into Glass's cart constitute adequate provocation that merited a jury instruction on aggravated assault. According to Glass, the trial court erred in not instructing the jury because the trial court "decided that words alone could not constitute legally sufficient provocation."

{¶ 50} The evidence does not support a finding that Johnson's conduct was "serious provocation" under R.C. 2903.12(A). Johnson's actions and words were not sufficient to arouse the passions of an ordinary person beyond the power of his or her control. *See State v. Crim*, 2004-Ohio-2553, ¶ 13 (8th Dist.), citing R.C. 2903.12(A). ("[T]here was no 'serious provocation occasioned by the victim' as required for an instruction on aggravated assault" where the victim argued with

defendant about a card game and allegedly threw coins in defendant's face.) *See also State v. Weber*, 2015-Ohio-4371, ¶ 29 (8th Dist.) (Victim's "provocation was not sufficient to incite" defendant into using deadly force where, during a verbal exchange, victim "pulled up next to the passenger's side of [defendant's] truck" and "banged on [defendant's] passenger-side window with his right hand . . . .")

{¶ 51} Glass also argues that relatively less-severe conduct is required to establish "adequate provocation" when an offender uses nondeadly force. Glass posits that "the measure of provocation that can mitigate an offense to an inferior degree depends upon the seriousness of the offense being mitigated." However, while an offender's actual use of deadly force is not an element of aggravated assault, the victim's "serious provocation" must still be reasonably sufficient to incite its use. R.C. 2903.12, *see also State v. Henry*, 2016-Ohio-692, ¶ 36 (8th Dist.) ("'Deadly force' merely describes the 'seriousness' of the provocation required for a defendant to qualify for mitigation" and is "not an element of the offense."). The trial court did not abuse its discretion by finding that the evidence of Johnson's conduct did not establish adequate provocation to merit jury instructions on aggravated assault.

### 2. Recklessly Causing Serious Physical Harm

{¶ 52} Glass also argues the court abused its discretion in declining to instruct the jury on reckless assault. We disagree. Reckless assault occurs when an offender recklessly causes serious physical harm to another. R.C. 2903.13(B). "'Reckless assault, in violation of R.C. 2903.13(B), is a lesser included offense of

felonious assault, in violation of R.C. 2903.11(A)(1).'" *In re J.O.*, 2023-Ohio-2293, ¶ 63 (8th Dist.), quoting *State v. Tolle*, 2015-Ohio-1414, ¶ 10 (12th Dist.).

{¶ 53} Viewing the record in the light most favorable to Glass, the evidence did not support a conviction for reckless assault. As we found in response to Glass's fourth assignment of error, by voluntarily punching Johnson in the head, Glass acted knowingly in a manner that was likely to — and did — cause serious physical injury. The trial court, therefore, did not abuse its discretion by not issuing jury instructions regarding reckless assault.

{¶ 54} Accordingly, assignment of error No. 3 is overruled.

**D. Assignment of Error No. 1 — Ineffective Assistance of Counsel**

{¶ 55} In her first assignment of error, Glass asserts that her attorney provided ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show his attorney was deficient; i.e. that he made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. *State v. Newberry*, 2025-Ohio-2004, ¶ 28 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's errors must also have prejudiced the defense such that defendant did not receive a fair trial. *Id.*, citing *id.* "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for the counsel's errors, the result of the trial would have been different." *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

### 1. Jury Instructions

{¶ 56} Glass first argues that, at trial, her lawyer failed to request a jury instruction on simple assault. We disagree. Not requesting this instruction was not deficient performance because, as discussed above, the evidence did not support a conviction for simple assault. Had counsel for Glass asked the court to instruct the jury regarding simple assault, denial of that request would have been appropriate. Glass's trial lawyer, therefore, did not prejudice Glass's defense by not asking the court to instruct the jury on simple assault.

{¶ 57} In support of this assignment of error, Glass again argues that serious physical harm was not a likely result of punching Johnson because she and Johnson were both women and both fighting. As we found above, neither of these facts change that serious physical harm is the likely result of voluntarily punching a person in the head repeatedly, which Glass did.

{¶ 58} Further, "the decision about which defense or theory to pursue at trial is a matter of trial strategy '"within the exclusive province of defense counsel to make after consultation with his [or her] client."'" *State v. Hughkeith*, 2023-Ohio-1217, ¶ 101 (8th Dist.), quoting *State v. Lloyd*, 2021-Ohio-1808, ¶ 32 (8th Dist.), quoting *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001). Glass's trial counsel requested instructions regarding reckless assault, from which a jury could find that Glass — as she now asserts — did not knowingly cause serious physical harm. We will not second-guess trial counsel's decision to request instructions regarding reckless assault, rather than simple assault.

## 2. "Mutual Combat" Defense

{¶ 59} Glass next claims that her trial counsel performed deficiently by trying to assert a defense — "mutual combat" — that does not exist in Ohio. Per Glass, her attorney's attempt to argue mutual combat was effectively an admission of guilt. Glass points out that Ohio courts have found that both parties to a consensual fight are guilty of assault or felonious assault, depending on the resulting harm.

{¶ 60} Glass has not established that trial counsel's arguments about mutual combat constituted deficient performance. Glass mischaracterizes her lawyer's statements. At trial, counsel said, "I haven't asked the Court to instruct on an affirmative defense that would say she committed the acts, and however, she's not guilty because I've proven mutual combat." Trial counsel explained that she had instead raised the issue of mutual combat because the jury "can consider that as to [Glass's] mens rea." Essentially, trial counsel argued that because Glass and Johnson were both participating in the fight, Glass did not know she would cause Johnson serious physical harm. That is the same argument that now underlies each of Glass's assignments of error.

{¶ 61} Glass has not established that trial counsel's conduct prejudiced her case. Even though "mutual combat" is, as a matter of law, not a defense, the court did not instruct the jury on this concept. Further, Glass does not argue that trial counsel's supposed attempt to raise mutual combat as a defense precluded Glass from raising a different, valid defense.

{¶ 62} We also find no merit in Glass's argument that trial counsel prejudiced her defense by asserting mutual combat because doing so effectively admitted guilt. Regardless of trial counsel's statements, the evidence supported the jury's verdict finding Glass guilty of felonious assault. Glass voluntarily struck Johnson in the head, repeatedly. Johnson suffered broken bones as a result. Because the evidence supported Glass's conviction, counsel's statements regarding mutual combat did not prejudice Glass. Glass, therefore, has not demonstrated ineffective assistance of counsel.

{¶ 63} Accordingly, assignment of error No. 1 is overruled.

{¶ 64} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR