[Cite as *State v. Oliver*, 2025-Ohio-5856.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                  No. 114983

    v.                           :

GARY K. OLIVER,                         :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 29, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694693-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ben McNair, Assistant Prosecuting Attorney, *for appellee.*

The Law Office of Schlachet and Levy and Eric M. Levy, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Gary Oliver ("Appellant"), appeals his conviction and sentence on multiple charges related to the shooting death of Tiffany Greer

("Greer"), the unlawful termination of her pregnancy, and injury to Marquise Clark ("Clark"). For the reasons that follow, we affirm.

**Procedural and Factual History**

{¶ 2} In 2024, Appellant was charged in a 13-count indictment, as follows: Count 1, aggravated murder, in violation of R.C. 2903.01(A); Counts 2 and 4, murder, in violation of R.C. 2903.02(A); Counts 3 and 5, murder, in violation of R.C. 2903.02(B); Count 6, attempted murder, in violation of R.C. 2923.02/2903.02(A); Counts 7, 9, 11, felonious assault, in violation of R.C. 2903.11(A)(1); Counts 8, 10, 12, felonious assault, in violation of R.C. 2903.11(A)(2); and Count 13, having weapons while under disability, in violation of R.C. 2923.13(A)(3). Counts 1 – 12 were accompanied by one- and three-year firearm specifications. The matter proceeded to a jury trial on all counts and specifications.

{¶ 3} The events that transpired occurred on West 95th Street in Cleveland, Ohio. The main thoroughfares that intersect West 95th Street from north to south are Lorain, Denison, Almira, and Maywood Avenues.

{¶ 4} On April 19, 2022, Cleveland police officers responded to a call of shots fired. Upon arrival, Officer Anthony Lee observed a gold Honda Accord that appeared to have crashed through a construction barrier at Mercedes Park, which is located where West 95th Street intersects Maywood Avenue, south of Almira Avenue. In the front passenger seat was a female, later identified as 20-year-old Greer. Greer and the entire front passenger seat area where she sat were covered in

blood. Life-saving measures were attempted for Greer, but she was declared dead on the scene. Greer was approximately four months pregnant at the time of her death.

{¶ 5} Officers were informed that a male, later identified as the driver of the car, Marquise Clark ("Clark"), arrived at MetroHealth Hospital with gunshot wounds. Officers responded to the hospital and Clark provided officers with information of one of the men he alleged was involved, including an Instagram handle and phone number.

{¶ 6} Detective Eric Strick processed the crime scene, which included two locations. The first was Mercedes Park, where the Honda was found. The second location was near the intersection of West 95th Street and Denison Avenue. Detective Strick photographed the scene, including suspected marijuana in the gear shift area of the Honda. The detective recovered three 9 mm Luger cartridge cases and a Tac Light (referred to during trial as a weapons laser). The laser was later determined to have Appellant's DNA on it. The Honda had fingerprints belonging to Greer, Clark, and Appellant; notably, Appellant's fingerprints were found on the driver's side door of the Honda.

{¶ 7} Clark was a small-time marijuana dealer and routinely sold to Appellant. Clark would usually meet Appellant at a laundromat across the street from Appellant's house at West 95th Street and Lorain Avenue. According to Clark,

he usually sold Appellant a half "zip."[1]  Clark did not usually sell more than a "zip" at any one time to his customers.  Clark testified that he was living with Greer at the time of the shooting and she was pregnant.

{¶ 8} On April 19, 2022, Appellant sent Clark a direct message on Instagram to order marijuana.  Appellant ordered three "zips" of marijuana, six times the amount he normally ordered.  At the time, Clark did not think much of the size of the order because the next day, April 20, was considered "national weed day." (Tr. 234).  Instead of their normal meeting spot, Appellant told Clark to meet him at a specific address on West 95th Street, between Maywood and Almira Avenues. Clark testified that he did not see Appellant at the meeting spot, so he drove north on West 95th Street towards Lorain Avenue.  Clark finally spotted Appellant near the intersection of West 95th Street and Denison Avenue.  Greer, who was riding in the passenger seat, mentioned to Clark that she saw two other men nearby, but Clark initially did not take note of the men.

{¶ 9} Appellant walked up to the driver's side of the vehicle.  At some point during the brief exchange between Clark and Appellant, Appellant told Clark he only had $100 for him and could send him another $100 via Cash App.  Appellant was supposed to pay Clark $300 for the three "zips," so his statement that he did not have enough money for the transaction was "another red flag," according to Clark. (Tr. 240.)

---

[1] Clark testified that a "zip" is an ounce of marijuana.

**{¶ 10}** Clark testified that as he handed Appellant the drugs, Appellant "looked at the weed, looked at me and smelled it and looked up and basically shook his head. I don't know what type of signal he sent to them." (Tr. 238.) Clark then saw two "guys coming from the left side — coming from the right side of the car, on [Greer's] side." (Tr. 238.) Clark further explained:

> Like he [Appellant] is standing outside the car. He got the weed in one hand. He grabs it with the other hand, smells it. As he smells it, he is looking up. Once he looked up, he looked up over the car. That's what made me look to the right. That's when I looked to the right, they start coming towards the car and tapping the guns on the window.

(Tr. 240.)

**{¶ 11}** Clark reached down to grab the gear shift to drive off when the two men started shooting, firing several rounds into the car. Surveillance video, which was played for the jury and entered into evidence, showed that the Honda did not speed off until after the shots began. The video then showed the three men, including Appellant, flee in the same direction. According to Clark, Appellant "just stood there" as the two men approached. Clark never saw Appellant with a weapon.

**{¶ 12}** Clark testified that he sped down the street and eventually crashed into a concrete barrier at Mercedes Park. Clark observed that there was blood all over Greer, and she appeared lifeless. Clark fled, having sustained a gunshot wound to his left shoulder. He called a friend to take him to the hospital.

**{¶ 13}** Ja'lyn Barnes ("Barnes") testified that Appellant lived with her at West 95th Street and Lorain Avenue at the time of the shooting and she was pregnant with his child. Barnes spoke with Cleveland police in March 2023 and told

them that she recalled that, one night in April 2022, Appellant woke her, got down on his knees, and told Barnes he loved her. Barnes described Appellant's demeanor as "frantic." (T. 298.) Barnes told police that Appellant owned a firearm with a "green beam," but she did not see him carrying it that evening. (*Id.*)

{¶ 14} Detective Richard Tusing testified that the Instagram account that had been used to send Clark direct messages was assigned to Barnes. Detective Tusing obtained surveillance video from the area, which depicted three males walking southbound on West 95th Street toward the scene prior to the shooting. One male, who Clark identified as Appellant, approached the driver's side of his car. Then two more males, holding guns, approached the passenger side of the car and immediately began shooting. After the shooting, what appears to be the same three males are seen running northbound away from the scene. Detective Tusing testified that although one could not see their faces, he believed they were the same three men caught on camera before the shooting based on their height, build, and clothing.

{¶ 15} Dr. Elizabeth Mooney ("Dr. Mooney") of the Cuyahoga County Medical Examiner's Office testified that Greer was 15 to 16 weeks pregnant at the time of her death. Upon examination, Dr. Mooney determined there were no abnormalities with the fetus and nothing else within the examination indicated that Greer was carrying an unviable pregnancy at the time of her death.

{¶ 16} Dr. Mooney testified that Greer suffered multiple gunshot wounds including one that passed through the right shoulder and another that passed

through the back of the neck to the airway and the right carotid artery. Dr. Mooney could not tell where the shooter (or shooters) stood when the shots were fired, only that the shots were fired at close range. Dr. Mooney stated the blood loss and inability to breathe both contributed to the cause of death and ruled Greer's death a homicide.

{¶ 17} As mentioned, surveillance video depicting the area was shown to the jury and entered into evidence. One camera showed three men walking southbound on West 95th from Lorain Avenue toward Denison Avenue at 9:51 – 9:52 p.m. The men appeared to be walking at a normal pace, and one man had his phone out. Instagram direct messages were also entered into evidence showing a series of messages between Clark and Appellant. The first message in the series was sent from Appellant to Clark 10:13:25 p.m. stating that Appellant was in the back of the house where the men were supposed to meet, which was located on West 95th Street, south of Almira Avenue. But when Clark arrived, Appellant was not there. Clark confirmed he had the correct address and began driving northbound on West 95th Street while the men continued texting. During the exchange, Appellant told Clark to "come down the street," referring to West 95th Street.

{¶ 18} A different surveillance camera showed the area of the shooting, which occurred just south of Denison Avenue on West 95th Street. The video showed the Honda traveling northbound on West 95th toward Denison at 10:21:13 p.m. At this point, Clark testified, he saw Appellant, so he backed up and turned around; at this

time the Honda faced southbound on West 95th and the driver's side door was closest to Appellant.

{¶ 19} Appellant was picked up on surveillance video walking southbound on West 95th Street at 10:21:14 p.m. At 10:21:42 p.m., Appellant approached the driver's side door of the Honda, walking westbound across West 95th Street, where he remained until after the shooting.

{¶ 20} The other two men appeared on the video at 10:22:22 p.m. and could be seen approaching the car, walking eastbound from behind a building toward the passenger side of the Honda, where Greer sat. Multiple shots rang out as soon as the men got to the car, at 10:22:33 p.m. The car then sped off, going southbound on West 95th Street. At 10:31 p.m., the same camera that caught the men walking southbound on West 95th Street showed what appeared to be the same three men running northbound on West 95th towards Lorain Avenue.

{¶ 21} Based on this evidence, the jury convicted Appellant of all counts and specifications and, after merging certain counts, the trial court sentenced Appellant to life in prison, with the possibility of parole after 40 to 42 years.

## Assignments of Error

I.  Appellant was found guilty by the jury in each count of the indictment absent sufficient evidence including insufficient evidence to support convictions upon a theory of aiding and abetting.

II. The jury's guilty finding for each offense was against the manifest weight of the evidence.

III. The trial court committed plain error when it gave a general jury instruction on complicity prior to instructing on each offense and did

not provide a complicity instruction for each specific offense including the application of the mens rea element.

IV. The trial court committed plain error when it permitted prosecutorial misconduct in the state's closing argument where it improperly shifted the burden to appellant to disprove accomplice liability.

**Sufficiency of the Evidence**

{¶ 22} In the first assignment of error, Appellant argues that his convictions were supported by insufficient evidence. "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 2022-Ohio-1237, ¶ 7 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 23} When making a sufficiency determination, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *Thompkins* at *id*.

{¶ 24} Here, Appellant argues that the State failed to present sufficient evidence to demonstrate that he knew that the other two men had firearms or that

they would use the firearms to shoot into the Honda, causing death to Greer, the unlawful termination of her pregnancy, and injury to Clark.

{¶ 25} The State's theory of the case was that Appellant was complicit in the shooting. Ohio's complicity statute provides, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). A person convicted under the complicity statute "shall be prosecuted and punished as if [he or she] were a principal offender." R.C. 2923.03(F). "'A person is guilty of complicity if that person aids or abets another in committing an offense while acting with the kind of culpability required for the commission of an offense.'" *State v. Crosby*, 2018-Ohio-3793, ¶ 12 (8th Dist.), quoting *State v. Moore*, 2004-Ohio-2320, ¶ 26 (7th Dist.), citing R.C. 2923.03(A)(2). To support a conviction for complicity, "'the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.'" *State v. Jackson*, 2025-Ohio-109, ¶ 29 (8th Dist.), quoting *State v. McFarland*, 2020-Ohio-3343, ¶ 27-29. "Aiding and abetting may be shown by both direct and circumstantial evidence, and 'participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v. Wilborn*, 2024-Ohio-5003, ¶ 43 (8th Dist.), quoting *State v. Johnson*, 93 Ohio St.3d 240, 243 (2001).

{¶ 26} Here, Appellant argues that his convictions must be vacated because his convictions relied on a theory of complicity and the evidence failed to demonstrate that he was the shooter or in possession of a firearm. Viewing the evidence in a light most favorable to the State, we find there was sufficient evidence presented at trial for a rational finder of fact to conclude that Appellant was complicit in the murder of Greer, the unlawful termination of her pregnancy, and injury to Clark.

{¶ 27} The evidence showed that Appellant contacted Clark to set up a marijuana transaction. He told Clark that he wanted to purchase three "zips" or ounces, six times the amount he usually ordered. Appellant told Clark to meet him at an address that was different from their normal meeting spot. Once Clark got to the location, Appellant was not there, despite Appellant claiming he was in the backyard. A reasonable juror could conclude that Appellant lured Clark up West 95th Street to where the men finally met.

{¶ 28} Surveillance video showed three men walking southbound on West 95th Street prior to the shooting. The same camera caught what appeared to be the same group of men running northbound on West 95th shortly after the shooting. This, coupled with Clark's testimony that Appellant appeared to signal to someone just moments before the shooting, could lead a reasonable juror to believe that Appellant was more than a mere bystander and was involved in setting Clark up to be killed.

{¶ 29} In support of his position, Appellant cites *State v. Shabazz*, 2014-Ohio-1828 (8th Dist.). In *Shabazz*, this court reversed a felony-murder conviction on sufficiency grounds because "[t]here was no evidence that [the defendant] was aware that [the principal] had a gun until the shot was fired." *Id.* at ¶ 31, citing *Rosemond v. United States*, 572 U.S. 65 (2014).

{¶ 30} In *Crosby*, 2018-Ohio-3793, at ¶ 11, this court distinguished *Shabazz*, noting that the *Shabazz* panel had concluded that there was no evidence that the defendant aided and abetted the principal in that particular case. The *Crosby* Court found that *Shabazz* was inapplicable to cases where the evidence demonstrated that the defendant aided and abetted the principal. *Id.*; *see also State v. Clark*, 2025-Ohio-5342, ¶ 41 (8th Dist.) (distinguishing *Shabazz*).

{¶ 31} Because there was evidence that Appellant aided and abetted his accomplices, *Shabazz* is distinguishable. As outlined above, there was sufficient evidence that Appellant was complicit in the shooting.

**Prior Calculation and Design**

{¶ 32} Appellant also argues that there was no evidence of prior calculation and design to support his conviction for aggravated murder. Pursuant to R.C. 2903.01(A), a defendant who "purposely, and with prior calculation and design, cause[s] the death of another or the unlawful termination of another's pregnancy" is guilty of aggravated murder.

{¶ 33} Generally, to prove prior calculation and design, the State must show that the "defendant had the time and opportunity to plan a homicide and the

homicide's circumstances 'show a scheme designed to implement the calculated decision to kill.'" *State v. Maxwell*, 2014-Ohio-1019, ¶ 148 (2014), quoting *State v. Cotton*, 56 Ohio St.2d 8 (1978), paragraph three of the syllabus. The "time and opportunity requirement" is not literal and does not need to be necessarily long. All that is required is that the evidence at trial shows "presence of sufficient time and opportunity for the planning of an act of homicide . . . ." *Cotton* at paragraph three of the syllabus. In other words, prior calculation and design is "generally understood to encompass the calculated decision to kill." *State v. Jackson*, 2000 Ohio App. LEXIS 133, *6 (8th Dist. Jan. 20, 2000), citing *State v. Robbins*, 58 Ohio St.2d 74 (1979). "Prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill." *State v. Coley*, 93 Ohio St.3d 253, 264 (2001).

{¶ 34} If the evidence presented by the State, however, is that the homicide was a "spontaneous eruption" of events, then prior calculation and design cannot be shown. *See, e.g. State v. Walker*, 2014-Ohio-1827 (8th Dist.) (bar fight with a sudden shooting).

{¶ 35} The Supreme Court of Ohio has been clear that "[t]here is no bright-line test for determining whether a defendant's actions show a premeditated decision or studied consideration to kill — each case turns on its own facts." *State v. Jones*, 2021-Ohio-3311, ¶ 17. Nonethless, the Court has identified three non-exclusive factors, which serve as "pertinent considerations" for determining whether there was sufficient evidence of prior calculation and design. *Id.* These factors are:

(1) Did the accused and victim know each other, and if so, was that relationship strained?

(2) Did the accused give thought or preparation to choosing the murder weapon or murder site?

(3) Was the act drawn out or "an almost instantaneous eruption of events"?

*State v. Taylor*, 78 Ohio St.3d 15, 19 (1997), quoting *State v. Jenkins*, 48 Ohio App.2d 99, 102 (8th Dist. 1976).

{¶ 36} Here, we find that the State presented sufficient evidence that Appellant acted with prior calculation and design. Clark testified that Appellant contacted him through Instagram to purchase marijuana; the men knew each other, Clark having sold Appellant marijuana in the past. Although there appeared to be no animosity between the men prior to the shooting, this alone is not dispositive.

{¶ 37} Appellant told Clark that he wanted to purchase an amount that was six times his normal buy. There was also evidence that Appellant gave thought to the murder site, because he told Clark to meet him at a different location from their normal meeting spot. Clark arrived at the address on West 95th Street, but Appellant was not there, despite Appellant's claim he was in the backyard. A reasonable juror could conclude Appellant lured Clark up West 95th to where the ambush took place.

{¶ 38} Appellant also had a weapons laser on his person, as evidenced by his DNA found on the laser, and was known to have a firearm. Lastly, Appellant's accomplices did not approach spontaneously; they waited until Clark and Appellant

were in the middle of their transaction and Appellant gave them a look to approach from the passenger side of the vehicle. The shooting took place within seconds of the two accomplices approaching the car, evidencing a thought out intent to kill, as opposed to a robbery gone bad.

{¶ 39} Finally, we note that Appellant's counsel conceded that the other two men acted with prior calculation and design at oral argument. Therefore, because Appellant was shown to be complicit in the shooting, he too acted with prior calculation and design.[2]

**Having Weapons While Under Disability**

{¶ 40} Finally, Appellant claims that the State provided insufficient evidence to support his having weapons while under disability conviction under R.C. 2923.13(A)(3) because there was no evidence that Appellant had a gun and because Appellant cannot be complicit in a weapons-disability charge — the disability must belong to the principal actor.

{¶ 41} Courts, including this court, have consistently held that physical recovery of the firearm is not required to sustain a conviction for having a weapon while under disability. *State v. White*, 2008-Ohio-6152 (8th Dist.) (holding witness testimony was sufficient to support a conviction for having weapons while under disability); *State v. Freeman*, 2020-Ohio-3381 (10th Dist.) (holding witness testimony was sufficient to support a conviction for having weapons while under

---

[2] Even if counsel had not conceded, there was ample evidence of prior calculation and design.

disability when no gun was recovered).  Although no firearm was ever recovered, police found a Tac Light on the scene, near where Appellant had been standing at the time of the shooting.  The laser had Appellant's DNA on it.  Barnes testified that Appellant had firearms and specifically recalled one with "a green beam." (Tr. 298.)

{¶ 42} Additionally, even if appellant was not armed, he could still be convicted on a weapons-disability charge under a complicity theory.  *See State v. Adams*, 2010-Ohio-4478, ¶ 21 (8th Dist.) (upholding a weapon disability conviction finding that the defendant can be convicted of having a weapon that he constructively possessed through his accomplice while under his own disability).

{¶ 43} Based on the foregoing, we find that Appellant's convictions were supported by sufficient evidence and the first assignment of error is overruled.

**Weight of the Evidence**

{¶ 44} In the second assignment of error, Appellant argues that his convictions were against the weight of the evidence because the totality of evidence indicated that Appellant was not a perpetrator in the shooting.

{¶ 45} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins*, 78 Ohio St.3d at 387.  While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law . . . weight of the evidence addresses the evidence's effect of inducing belief."  *Id.* at 386-387.  "In other words, a reviewing court asks whose evidence is more persuasive — the State's or the defendant's?"  *Id.*  The reviewing court must consider all the evidence in the

record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983).

{¶ 46} Appellant makes the same argument as he did under the first assignment of error: the State was unable to show that he was complicit in the shooting. We disagree.

{¶ 47} Clark testified that he regularly sold marijuana to Appellant. On April 19, 2022, Appellant contacted him via Instagram to purchase six times his usual amount of marijuana, and Clark agreed to sell three ounces of marijuana to Appellant for $300. After agreeing on the price, Appellant told Clark to meet him at a different location from their usual meeting spot. Surveillance video showed three men walking southbound on West 95th Street prior to the shooting. Clark drove Greer to meet with Appellant, but when he arrived at the location, he was unable to find Appellant.

{¶ 48} Over the course of the next seven minutes, the men exchanged a series of Instagram messages. Clark eventually found Appellant near the intersection of West 95th Street and Denison Avenue. The Appellant then approached Clark, coming up to the car on the driver's side. After Clark handed Appellant the drugs, Appellant informed Clark that he was $100 short of the agreed-upon amount. As the men were talking, two other men approached the Honda on the passenger side.

Multiple shots were fired, striking Clark, fatally striking Greer, and terminating her pregnancy. Appellant was seen fleeing in the same direction as the two other individuals: back towards Appellant's residence.

{¶ 49} Based on this, the jury did not lose its way and create a manifest injustice in convicting Appellant.

{¶ 50} The second assignment of error is overruled.

**Jury Instructions**

{¶ 51} In the third assignment of error, Appellant argues that the trial court committed plain error in giving one "generic" instruction on aiding and abetting/complicity instead of providing the instruction under each of the 13 counts.

{¶ 52} Appellant did not object to this at trial; therefore, he has waived all claims of error except for plain error. "'To prevail under a plain error analysis, the appellant bears the burden of demonstrating, but for the error, the outcome of the trial would clearly have been different.'" *State v. Glass*, 2025-Ohio-4670, ¶ 41 (8th Dist.), quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 3. We may not "'reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error.'" *State v. Shepherd*, 2016-Ohio-931, ¶ 25 (8th Dist.), quoting *State v. McKibbon*, 2002-Ohio-2041, ¶ 27 (1st Dist.). As such, Appellant must also demonstrate that he was prejudiced by the error.

{¶ 53} Generally, "'[t]rial courts have broad discretion in determining whether the evidence presented at trial was sufficient to warrant a particular jury instruction.'" *Clark*, 2025-Ohio-5342, at ¶ 21 (8th Dist.), quoting *State v.*

*Echevarria*, 2018-Ohio-1193, ¶ 27 (8th Dist.).  The instructions, however, must

"'fully and completely give the jury all instructions which are relevant and necessary

for the jury to weigh the evidence and discharge its duty as the fact finder.'"  *Clark*

at *id.*, quoting *State v. White*, 2015-Ohio-492, ¶ 46.

{¶ 54} Here, the trial court instructed the jury as follows:

> Aiding and abetting. With regard to the charges against the defendant, you may consider the matter of complicity. Complicity is sometimes referred to as aiding and abetting. These terms mean essentially the same thing.
>
> Aid. Aid means to support, assist, encourage, cooperate with, advise, or incite.
>
> Abet means to encourage, counsel, incite, or assist.
>
> Before you can find the defendant guilty of complicity by aiding and abetting, you must find beyond a reasonable doubt that the defendant supported, assisted, encouraged, cooperated with, advised or incited the principal offender in the commission of the offense and that the defendant shared the criminal intent of the principal offender.
>
> Such person — intent may be inferred from the circumstances surrounding the offense including but not limited to presence, companionship and conduct before and after the offense was committed. The mere presence of the defendant at the scene of the offense is not sufficient to prove in and of itself that the defendant was an aider and abettor.
>
> Such person is regarded as if he were the principal offender and is as guilty as if personally performed every act constituting [the offense]. This is true even if such person was not physically present at the time the offense was committed.
>
> When two or more persons have a common purpose to commit an offense or offenses and one does one part and the second or third person performs another part, those acting together have the purpose and knowledge required for the offense charged.

> The mere physical presence of a person during the commission of a criminal offense does not in and of itself constitute aiding and abetting, or to put it another way, complicity . . . if that person did not act in furtherance of the criminal offense.

(Tr. 427-428.)

{¶ 55} Appellant contends that it was error for the trial court to give the instruction one time, before it instructed the jury on the 13 charges, rather than including the instruction with its recitation of each offense. We disagree.

{¶ 56} Appellant cites *State v. Schaeffer*, 2015-Ohio-3531 (3d Dist.), and *State v. Noor*, 2014-Ohio-3397 (10th Dist.), to support his claim that the trial court committed plain error. Pursuant to both cases, Appellant argues that a trial court errs in failing to instruct the jury, on each count, that the defendant must have shared the culpable mental state for the commission of the principal offense. In other words, courts are required to instruct as to the intent of the accomplice as related to each specific count. We are not persuaded. In *Schaeffer*, the trial court found plain error because the trial court failed to instruct the jury on the requisite mental state when determining complicity. *Id.* at ¶ 77. In this case, however, the trial court clearly instructed the jury that it would have to find that Appellant "shared the criminal intent of the principal offender" in order to find him guilty. (Tr. 427.) In *Noor*, the court found that failure to instruct the jury on the requisite mental state attached when determining complicity to a crime was plain error, but that the error was ultimately harmless under the facts and weight of the evidence. *Id.* at ¶ 36 – 55.

{¶ 57} In *State v. Skatzes*, 2004-Ohio-6391, the Ohio Supreme Court considered a complicity instruction given by the trial court: "Before you can find the defendant guilty, you must find beyond a reasonable doubt that the defendant, acting with the required culpable mental state for the particular offense . . . conspired with another to commit the offenses." *Id.* at ¶ 58. The Ohio Supreme Court concluded the instruction was not erroneous because it was unambiguous and the language tracked the complicity statute. *Id.* The Court determined that the "jurors would have understood this instruction to mean that they should apply the culpable mental state for the offense that they found to be the object of the conspiracy." *Id.*

{¶ 58} Similarly, in *State v. Mincey*, 2018-Ohio-662 (1st Dist.), the court held that the trial court followed the language of the statute in instructing the jury and that since the culpable mental state (knowingly) with the accompanying charge was given by the court immediately following the complicity instruction, "[t]he jurors would have understood that they should apply 'knowingly' to the complicity charge." *Id.* at ¶ 31 - 32.

{¶ 59} The same reasoning applies to this case. The trial court gave a complicity instruction and immediately following the complicity instruction, the court gave the charge as to each of the 13 counts, referencing the culpable mental states in connection with each count. The jurors would have understood that they should apply the requisite mental state to the complicity charge. *See State v. Price*,

60 Ohio St.2d 136 (1979) (finding that a single jury instruction may not be judged in artificial isolation but must be viewed in the context of the overall charge).

{¶ 60} The Ohio Supreme Court has noted that "'[n]o purpose is served . . . by requiring courts to present redundant jury instructions or instructions that are so similar to other instructions to be presented as to be confusing.'" *Clark*, 2025-Ohio-5342, at ¶ 22, quoting *State v. Griffin*, 2014-Ohio-4767. For the court to include the same complicity instruction 13 times would be redundant. We are convinced that the jury instructions, when read and understood together, adequately conveyed the entirety of the substantive law.

{¶ 61} Finally, Appellant argues that the trial court committed plain error in instructing the jury on the weapon-disability charge because the disability must belong to the person being aided and abetted. The claim that the disability must belong to the complicit person, as opposed to the principal offender, was dispensed with under the first assignment of error. For the same reasons, this claim is meritless and the trial court did not commit error, plain or otherwise, in its instruction on weapons-disability.

{¶ 62} The third assignment of error is overruled.

**Prosecutorial Misconduct**

{¶ 63} In the fourth assignment of error, Appellant alleges prosecutorial misconduct when the State, during closing argument, put the burden on Appellant to show he was not aiding and abetting.

{¶ 64} A prosecutor's remarks constitute misconduct if the remarks were improper and prejudicially affected an accused's substantial rights. *State v. Williams*, 2003-Ohio-4164, ¶ 44, citing *State v. Smith*, 14 Ohio St.3d 13 (1984). As in the case here, when there is no objection to prosecutorial misconduct during the trial, it must be shown to amount to plain error. *State v. Newman*, 2020-Ohio-658, ¶ 8 (8th Dist.), citing *State v. White*, 82 Ohio St.3d 16 (1998).

{¶ 65} Appellant alleges that the State committed prosecutorial misconduct that rose to the level of plain error when it stated the following during its closing arguments:

> Who set this up? Gary [Oliver]. Gary set it up. Gary directed the other two where to go. He picked the location and then the other two come with him. They're working in concert. The law states that if you work in concert in such a way that you're all guilty for each other's actions unless there is something to show that you weren't aiding and abetting. Gary wasn't just standing there. Gary was engaging Marquise [Clark]. He gave the signal, and I believe you can infer that he brought his weapon because we found his laser with his DNA. He is just as guilty, just as culpable as whoever pulled the trigger and shot that bullet because of the way they worked in concert.

(Tr. 471.)

{¶ 66} Appellant urges reversal, arguing that the State's comment, "unless there is something to show you weren't aiding and abetting," improperly shifted the burden of proof from the State to Appellant to prove he was not complicit.

{¶ 67} First, we note that opening and closing arguments are not evidence. *State v. Kirkland*, 2020-Ohio-4079, ¶ 117 (2020). And we cannot view the State's

comment in a vacuum; we consider the totality of the statement to determine whether there was prejudice. *See State v. Welch*, 2010-Ohio-1206, ¶ 28 (8th Dist.).

{¶ 68} Here, the State's comment did not amount to telling the jury Appellant had the burden of proof at trial. The comment was that if the men, including Appellant, were working in concert then they are all guilty, unless there was evidence to show that Appellant was not complicit. In other words, the State was arguing that the evidence showed that the men were working together and the evidence did not show that Appellant was a mere bystander. This court has held that the State may comment upon the failure of the defense to offer evidence in support of its case. *State v. Craig*, 2011-Ohio-206, ¶ 25 (8th Dist.), citing *State v. Williams*, 23 Ohio St.3d 16 (1986). The State's comment amounts to just that.

{¶ 69} During voir dire, the State told the jury that they must "hold [the State] to our burden" and if the State were to fail in meeting that burden, jurors must find the Appellant not guilty. (Tr. 67 and 74). The State also told the jury that Appellant "has an absolute right to not testify. [Appellant] has an absolute right to not present evidence if he doesn't want to, and the only people in this entire room who have any burden are here. [The State has] the entire burden in this case." (Tr. 85-86.) The trial court also instructed the jury that the burden of proof belonged to the State. At no point did the State suggest that Appellant had the burden of proof at trial.

{¶ 70} Appellant has failed to show that the outcome of the trial would have been different had the State not made the allegedly offending comment. We find

this statement did not affect the outcome of this case and therefore there is no plain error.

{¶ 71} Accordingly, the fourth assignment is overruled.

{¶ 72} Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. The trial court did not commit plain error in instructing the jury, and the State did not commit prosecutorial misconduct.

{¶ 73} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)